**Alice S. GRIMES, Appellant,**

v.

**Ronald E. REYNOLDS, Individually and Brown, Brown & Reynolds, P.C., Appellees.**

No. 14–07–00196–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 13, 2008.

555

Peter Costea, Houston, for appellant.

Conrell Brown, Robert S. Bennett, Bellaire, Renee E. Moeller–Taylor, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices ANDERSON, and BOYCE.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from the granting of a summary judgment in favor of the defendants in a legal malpractice case. Finding appellees, Ronald E. Reynolds and Brown, Brown & Reynolds, P.C., failed to meet their summary judgment burden, we reverse and remand to the trial court for further proceedings in accordance with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

As this is a legal malpractice case arising out of appellees' representation of appellant in a federal lawsuit, our factual background begins with a review of that underlying lawsuit.

### A. The Underlying Federal Lawsuit

For much of the time period relevant to the underlying lawsuit, appellant was employed as a nurse in the cardiac catherization lab ("cath lab") at The Methodist Hospital ("Methodist"). Appellant consistently received good evaluations of her performance as a cath lab nurse.

According to appellant, beginning in September 1995, she was subjected to continuing episodes of sexual harassment by Methodist employees as well as by doctors working in the Methodist cath lab. The initial episode of harassment involved a Methodist employee. Appellant reported the harassment and the employee was subsequently disciplined.

In 1996 or 1997, some of the doctors who performed procedures in the Methodist cath lab began to sexually harass appellant. When appellant reported the harassment to Methodist management, she was told she "was a pretty girl and ... should expect these things and just ignore him."

This harassment continued into the spring of 2000 despite appellant's repeated complaints about the behavior.

In January 2000, fellow Methodist cath lab employees began to sexually harass appellant. In one of the incidents, the employee grabbed appellant's shoulders from behind and pushed his hips against appellant's buttocks. In the second incident, a Methodist employee placed a model of a penis in appellant's chair. Appellant reported the incidents to her supervisor. Methodist informed appellant that an investigation had been conducted and the results were "none of her business." In late August 2000, appellant took a medical leave of absence from Methodist. She did not return to work until November 2000. Upon her return, appellant met with her supervisors, and she was told the best way to handle the problem in the cath lab was to transfer appellant out of the cath lab to a position as a floor nurse. When appellant rejected the proposed transfer, she was informed that if she refused to accept the transfer, it would be considered a voluntary termination. Appellant was told to leave her hospital badge when she left the meeting. Appellant left the meeting and went home. Approximately a week later, a Methodist manager contacted appellant and asked to her come to the hospital for a meeting. At the meeting, the manager told appellant Methodist had rethought the situation and had decided not to terminate her and wanted to attempt to work something out. About a week after that conversation, Methodist offered appellant a position in the hospital's blood bank, which she accepted even though it was not the position she wanted.

In May 2000, appellant filed a complaint of sexual discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights. In Janu-

ary 2002, the EEOC issued a determination letter in which it found the testimonial evidence did not support appellant's allegation of a hostile work environment. However, the EEOC did find the evidence supported appellant's allegation that Methodist retaliated against her for filing her EEOC complaint. EEOC efforts to resolve the issue through conciliation failed.

In March 2002, appellant was terminated, ostensibly for excessive absences.

Following her termination, appellant retained Reynolds and his firm to handle her claims against Methodist. On January 15, 2003, appellees filed suit on appellant's behalf against Methodist in federal court. Appellant alleged Methodist subjected her to sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e *et seq.*, as well as common law causes of action.[1]

During the course of the litigation, Methodist propounded eight requests for admission on appellant. The first request for admission asked appellant to admit she filed her EEOC complaint too late. The second request for admission asked appellant to admit the incidents of sexual harassment were not severe or pervasive. The third request for admission asked appellant to admit she did not report the sexual harassment to Methodist's management. The fourth request for admission asked appellant to admit Methodist took prompt remedial action in response to appellant's complaints of discrimination. The fifth request for admission asked appellant to admit she did not timely file her federal lawsuit. The sixth request for admission asked appellant to admit that, with respect to her retaliation claim, she did not sustain an adverse employment action. The seventh request for admission asked appellant to admit Methodist's conduct was

not extreme and outrageous. The eighth and final request for admission asked appellant to admit she was terminated for excessive absences. Reynolds did not file answers to any of the requests, thus, under federal practice, the requests for admission were deemed admitted without any formal action by the trial court. Fed. R.Civ.P. 36(a).

Methodist then filed a motion for summary judgment. The primary basis supporting the motion was appellant's deemed admissions. Reynolds never filed a response to the motion for summary judgment. The federal court, emphasizing appellant's deemed admissions, granted the motion. In its memorandum opinion, the trial court stated "[i]n the absence of a written response to the defendant's motion for summary judgment, and the absence of a genuine issue of material fact that would bar summary judgment, the Court finds that summary judgment is appropriate." Following the entry of the take nothing final judgment by the trial court, Reynolds did not file a motion for new trial or an appeal of the final judgment. In addition, Reynolds did not tell appellant that he failed to file a response to the motion for summary judgment. Finally, Reynolds did not tell appellant the trial court had entered a take nothing judgment against her until appellant contacted him inquiring as to the status of her case several months after the summary judgment had been granted. This conversation, initiated by appellant, did not occur until long after the appellate deadlines had passed.

## B. The Malpractice Lawsuit

Once she learned the fate of her Title VII suit against Methodist, appellant filed the current malpractice lawsuit against ap-

---

1. Appellant admits her common law causes of action are barred by limitations and thus they are not at issue in this appeal.

pellees. Appellees eventually filed a motion for summary judgment, arguing they were entitled to judgment as a matter of law because, even if Reynolds had filed a summary judgment response, appellant was unable to prove any damages in the underlying discrimination lawsuit. The trial court granted appellees' motion and this appeal followed.

#### DISCUSSION

In a single issue on appeal, appellant challenges the trial court's final summary judgment. In this issue, appellant contends the trial court erred when it granted appellees' motion for summary judgment because there were genuine issues of material fact precluding the granting of appellees' motion.

### A. The Standard of Review

In their motion for summary judgment, appellees did not specify whether they were making a traditional motion for summary judgment or a no-evidence motion. *Compare* Tex.R. Civ. P. 166a(c), *with* Tex.R. Civ. P. 166a(i). Because the two forms of summary judgment are distinct and invoke different standards of review, before we can reach the merits of this appeal, we must make the initial determination as to which type of summary judgment is at issue. Since a motion that does not clearly and unambiguously state that it is being filed under Rule 166a(i) does not give the nonmovant notice that the movant is seeking a no-evidence summary judgment, we will construe it as a traditional motion under Rule 166a(c). *Adams v. Reynolds Tile and Flooring, Inc.*, 120 S.W.3d 417, 420 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see Michael v. Dyke*, 41 S.W.3d 746, 750 (Tex.App.-Corpus Christi 2001, no pet.) (holding when a motion for summary judgment fails to unambiguously state it is filed under Rule 166a(i), and does not strictly comply with the requirements of that rule, it will be construed as a traditional motion for summary judgment).

The movant for a traditional summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the non-movant's favor. *Id.* at 548–49. We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). In addition, when reviewing a summary judgment, we cannot read between the lines, infer or glean from the pleadings or proof any grounds for summary judgment other than those expressly set forth before the trial court in the motion itself. *Johnson v. Felts*, 140 S.W.3d 702, 706 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to a summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004). Only when the defendant establishes its right to summary judgment, does the burden shift to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

### B. Elements of a Legal Malpractice Cause of Action

To prevail on a legal malpractice claim, a plaintiff must show that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's

injuries, and (4) damages occurred. *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 117 (Tex.2004). When the plaintiff's allegation is that some failure on the attorney's part caused an adverse result in prior litigation, the plaintiff must produce evidence from which a jury may reasonably infer that the attorney's conduct caused the damages alleged. *Id.* In a legal malpractice suit arising out of an attorney's handling of prior litigation, the plaintiff's damages in the malpractice suit are the damages the plaintiff would have recovered in the underlying lawsuit. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665–66 (Tex.1989).

In this appeal, the only basis for summary judgment asserted by appellees in their motion, and thus the only ground at issue here, was that "[appellant] cannot prove any damages, even if Reynolds had filed a [summary judgment] response." *See Shaun T. Mian Corp. v. Hewlett–Packard Co.*, 237 S.W.3d 851, 855 (Tex. App.-Dallas 2007, rule 53.7(f) motion granted) (stating an appellate court cannot affirm a summary judgment on grounds other than those specified in the motion). Accordingly, in this appeal we must initially determine whether appellees, as the summary judgment movants, met their burden and established there was no genuine issue of material fact as to the existence of appellant's damages, thus entitling them to judgment as a matter of law. Only if we decide the answer to that initial question is yes, must we then decide whether appellant came forward with competent controverting summary judgment evidence raising a genuine issue of material fact.

## C. Did Appellees Satisfy Their Summary Judgment Burden?

### 1. What Damages are Recoverable in a Title VII Sexual Harassment and Retaliation Suit?

Under Title VII, a successful plaintiff may recover equitable relief, primarily back pay, compensatory and punitive damages, and attorney's fees.[2] 42 U.S.C.A. § 1981a (West 2003), 42 U.S.C.A. § 2000e–5(g) & (k) (West 2003).

 Compensatory damages can be awarded to a successful Title VII plaintiff for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42 U.S.C.A. § 1981a(b)(3). Emotional distress refers to an individual's emotional pain and suffering, mental anguish, and loss of enjoyment of life. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 n. 24 (5th Cir.2001). To merit an award greater than nominal damages, two requirements must be met. *Id.* at 488. First, the plaintiff must provide specific evidence of the injury. *Id.* Second, the plaintiff must make more than vague allegations to support the claim. *Id.*

 With regard to the first requirement, there must be a specific, discernable injury to the plaintiff's emotional state, and it must be proven with evidence showing the nature and extent of the injury. *Id.* Damages for emotional distress can be awarded if a plaintiff suffers sleeplessness, anxiety, marital problems, stress, and humiliation. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998). Under Title VII, damages for emotional distress can be awarded based exclusively

**2.** In addition to back pay, under Title VII, a successful plaintiff may also recover front pay, in lieu of reinstatement, as compensation for lost future wages and benefits. *Green v. Adm'r of Tulane Educ. Fund*, 284 F.3d 642, 658 (5th Cir.2002) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

on the testimony of the plaintiff. *Id.* at 1046–47. With regard to the second requirement, that the allegations not be vague, testimony that details anxiety, sleeplessness, loss of self-esteem, marital hardship, or stress is specific enough to support an award of compensatory damages for emotional distress under Title VII. *Id.* at 1047; *see Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803, 809 (5th Cir.1996) (holding that the specificity requirement was met by the plaintiff's testimony that she felt "very disgusted," "hopeless," "very embarrassed," "very belittled," "about two inches high," and "started to feel pretty stupid").

■ Punitive damages may be recovered by a successful Title VII plaintiff if that person "demonstrates that the [defendant] engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(1). Due to the nature of the injury that results from discrimination, a successful Title VII plaintiff may recover punitive damages even in the absence of an award of compensatory damages. *Abner v. Kan. City S. R.R. Co.,* 513 F.3d 154, 160 (5th Cir.2008).

*2. Appellees Did Not Meet Their Summary Judgment Burden.*

■ The only ground asserted by appellees in their motion for summary judgment was appellant's lack of damages in her underlying discrimination suit. In their brief in this appeal, appellees admit they breached the duty of care they owed appellant in the underlying lawsuit. While they admitted liability, appellees assert they were still entitled to summary judgment because appellant had no damages in the underlying suit. Appellees attached little competent summary judgment evidence to their motion. Appellees pointed out, both in their motion and in their appellate brief, the fact appellant had not

designated any experts to testify as to her economic or mental distress damages. Appellees attached the memorandum opinion issued by the federal district court in the underlying lawsuit as well as Methodist's motion for summary judgment along with its attached exhibits, including excerpts from appellant's deposition. Appellees contend these items establish, as a matter of law, appellant suffered no lost wages as a result of her termination by Methodist in March 2002.

We disagree that, under the appropriate standard of review, this evidence establishes as a matter of law appellant suffered no damages as a result of appellees admitted malpractice. Since mental distress damages can be awarded in a Title VII suit based exclusively on the testimony of the plaintiff, the lack of medical records or a testifying medical expert does not preclude appellant from recovering mental distress damages. *Migis,* 135 F.3d at 1047. Appellant's deposition excerpts also do not disprove the existence of economic and emotional distress damages as they do not address appellant's damages in the underlying lawsuit, but instead focus on the allegedly discriminatory acts underlying her federal lawsuit. The other exhibits attached to Methodist's motion do not prove appellant did not suffer economic damages as a result of Methodist's alleged discrimination. Instead, the exhibits establish, at most, that appellant was paid the same once she was transferred to the blood bank. The exhibits do not address how long appellant was unemployed following her termination by Methodist or how long it took appellant to find new employment. In addition, the mere fact that, at the time appellees filed their motion for summary judgment, appellant had not designated an expert to testify on the existence and the amount of her economic damages does not, standing alone, prove appellant did not have any economic dam-

ages. Title VII plaintiffs, due to the nature of discrimination injuries, can still recover punitive damages even in the absence of economic or emotional distress damages. *See Abner*, 513 F.3d at 164 (stating "[i]ndeed, there is some unseemliness for a defendant who engages in malicious or reckless violations of legal duty to escape either the punitive or deterrent goal of punitive damages merely because either good fortune or a plaintiff's unusual strength or resilience protected the plaintiff from suffering harm"). Because appellees only attacked the existence of appellant's economic and emotional distress damages in the underlying lawsuit, and did not attempt to prove appellant was not the victim of discriminatory conduct motivated by malice or reckless disregard of appellant's federally protected rights, they have not established, as a matter of law, appellant could not recover punitive damages. Finally, appellees' reliance on the memorandum opinion issued by the federal district court in the underlying discrimination suit is misplaced. By attempting to use this opinion, which was based on appellant's deemed admissions and lack of response to Methodist's motion for summary judgment, as evidence against appellant, appellees, who have admitted they breached the duty of care they owed appellant in the handling of appellant's discrimination lawsuit, seek to benefit from their own admitted malpractice. Because this memorandum opinion was based on deemed admissions resulting from appellees' failure to answer Methodist's requests for admissions and appellees' failure to file a response to Methodist's motion for summary judgment, we hold this memorandum opinion does not constitute competent summary judgment evidence which can support the granting of a motion for summary judgment.

We hold appellees did not conclusively negate the existence of appellant's damages in the underlying lawsuit, thus the burden never shifted to appellant to produce summary judgment evidence in response. Because appellees failed to carry their summary judgment burden, the trial court erred when it granted appellees' motion for summary judgment. Accordingly, we sustain appellant's single issue on appeal.

### CONCLUSION

Because we have sustained appellant's single issue on appeal, we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.