CIRCLE X LAND AND CATTLE COMPANY, LTD., Appellant,

v.

MUMFORD INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 14-09-00330-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 16, 2010.

Bill Payne, Bryan, Edward C. Small, Austin, for appellant.

William Steven Steele, Bryan, Bryan F. Russ, Jr., Hearne, for Appellee.

Panel consists of Justices BROWN, SULLIVAN, and CHRISTOPHER.

## SUBSTITUTE OPINION
## ON REHEARING

JEFFREY V. BROWN, Justice.

We originally issued our opinion affirming the trial court's judgment on August 31, 2010. Appellant Circle X Land & Cattle Company, Ltd., moved for rehearing. We overrule the motion for rehearing, vacate our August 31 judgment, withdraw our previous opinion, and issue this substitute opinion in its place. Our disposition of the appeal is unchanged.

This case arises out of a school district's condemnation of thirty acres of ranch land in Robertson County. Circle X is appealing the trial court's grant of Mumford Independent School District's motion for partial summary judgment. Circle X contends the school district failed to meet its burden to prove as a matter of law it was entitled to the summary judgment because it did not establish there was a public purpose for the condemnation or that the condemnation of all thirty acres was necessary. Circle X argues that its response to the motion for partial summary judgment raised fact issues about whether the school district acted arbitrarily or capriciously in condemning the land. Finally, Circle X complains the trial court erred in including in its judgment a clause stating Circle X

does not have the right to ingress and egress on the condemned property for the purpose of exploring, developing, drilling, or mining for oil and gas. We affirm.

## I

In 2002, Mumford Independent School District and Robertson County expressed their desire to acquire thirty acres of land to develop a sports and recreation complex. When the county decided to withdraw from the deal, the school district did not proceed with the acquisition. But the school district revisited the idea three years later, and on August 11, 2005, its board of trustees voted to start condemnation proceedings. A panel of three special commissioners reviewed the district's petition and approved the condemnation of thirty acres of Circle X's land. Circle X sued in district court claiming the school district had acted arbitrarily and capriciously in deciding to condemn the land.

The school district filed a motion for partial summary judgment, which the trial court denied. But after the district moved for reconsideration, the trial court granted the motion. After the partial summary judgment was granted, the school district and Circle X agreed on the amount of just compensation for the thirty acres. The trial court then signed a final judgment in favor of the district. This appeal followed.

## II

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). Here, the appellee moved for a traditional summary judgment. *See* Tex.R. Civ. P. 166a(c). The party moving for a traditional summary judgment has the burden to

show that no material fact issue exists and that it is entitled to summary judgment as a matter of law. Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (per curiam). We will assume that all evidence favorable to the non-movant is true and indulge every reasonable inference in favor of the non-movant. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A non-movant has the burden to respond to a traditional summary-judgment motion if the movant conclusively (1) establishes each element of its cause of action or defense, or (2) negates at least one element of the non-movant's cause of action or defense. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

Although the school district claims in its brief that it moved for both a traditional and a no-evidence summary judgment, the motion itself is ambiguous. *Compare* Tex.R. Civ. P. 166a(c), *with* Tex.R. Civ. P. 166a(i). Circle X contends that because the district's motion was ambiguous, we should construe it as a traditional motion for summary judgment. The two summary-judgment standards are distinct; therefore, we must determine which type of summary judgment is at issue. *Grimes v. Reynolds*, 252 S.W.3d 554, 558 (Tex. App.-Houston [14th Dist.] 2008, no pet.). In *Grimes v. Reynolds*, we held "[s]ince a motion that does not clearly and unambiguously state it is being filed under Rule 166a(i) does not give the non-movant notice that the movant is seeking a no-evidence summary judgment, we will construe it as a traditional motion under Rule 166a(c)." *Id.* Here, as in *Grimes*, we will construe the summary judgment to be a traditional motion.[1]

1. Furthermore, during oral argument, the school district's counsel conceded the motion

■ Additionally, when a motion for reconsideration or new trial is filed after a summary-judgment motion is heard and ruled upon, the trial court may ordinarily consider only the record as it existed before hearing the motion the first time. *See Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Chapman v. Mitsui Eng'g & Shipbuilding Co.*, 781 S.W.2d 312, 315 (Tex.App.-Houston [1st Dist.] 1989, writ denied). However, the trial court may consider evidence submitted with a motion for reconsideration so long as it affirmatively indicates in the record that it accepted or considered the evidence. *Auten*, 209 S.W.3d at 702; *see also* Tex.R. Civ. P. 166a(c) (summary-judgment evidence must be timely filed, "except on leave of court").

Here, after the trial court originally denied the school district's motion for partial summary judgment, it granted the motion to reconsider and rendered partial summary judgment. The court's order reflects that in so doing, it "considered the affidavits and exhibits submitted by Condemnor and Condemnee on the [motion for reconsideration] and the arguments and authority of counsel." The trial court, therefore, considered the arguments and evidence presented in the motion to reconsider and response. Thus, we may review the same to determine whether the trial

court erred in ultimately granting the school district's motion for partial summary judgment.[2] *See Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex.App.-Houston [1st Dist.] 2003), *pet. denied*, 181 S.W.3d 741 (Tex.2005).

## A

### Condemnation

The school district's eminent-domain powers are statutorily derived from section 11.155 of the Texas Education Code. *See* Tex. Educ.Code § 11.155. Section 11.155(a) provides that "[a]n independent school district may, by exercise of the right of eminent domain, acquire the fee simple title to real property for the purpose of securing sites on which to construct school buildings or for any other purpose necessary for the district." *Id.* § 11.155(a). A district court may determine all issues, including the authority to condemn property and assess damages, in any proceeding for eminent domain involving a political subdivision of the state. Tex. Prop.Code Ann. § 21.003 (Vernon 2004).[3]

■ The Texas Supreme Court has held that private property may be taken only for public use. *Borden v. Trespalacios Rice & Irrigation Co.*, 98 Tex. 494, 86 S.W. 11, 15 (1905). What is public use is a question of law.[4] *Tenngasco Gas Gather-*

for partial summary judgment invoked only the traditional summary-judgment standard.

2. Neither party has complained that the trial court considered any evidence that it should not have. Both parties supplemented the summary-judgment record at the motion-for-reconsideration stage without objecting to any untimeliness of the other's filings or any lack of notice.

3. One prominent exception to this general rule is Harris County, where the legislature has vested this authority exclusively in the county civil courts at law. Tex. Gov't Code § 25.1032(c) (Vernon 2004); *Taub v. Aquila*

*Sw. Pipeline Corp.*, 93 S.W.3d 451, 456 (Tex. App.-Houston [14th Dist.] 2002, no pet.).

4. The term "public use" has been defined various ways, and the Texas Supreme Court has construed "public use" liberally. *See Coastal States Gas Producing Co. v. Pate*, 158 Tex. 171, 309 S.W.2d 828, 833 (1958). Nevertheless, "public use" need not be defined liberally to encompass the taking of land for public education. The preeminent importance our state places on public education dates back to the days of the Republic of Texas. *See* Repub. Tex. Const. of 1836, General Provisions, § 5, *reprinted in* 1 *H.P.N. Gammel, The Laws of Texas* 1822–1897, at

*ing Co. v. Fischer*, 653 S.W.2d 469, 474 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). But when the legislature delegates to an entity the power to condemn, and the entity condemns the property for public use, the extent to which the property is taken is a legislative question. *Block House Mun. Util. Dist. v. City of Leander*, 291 S.W.3d 537, 541 (Tex.App.-Austin 2009, no pet.); *see Hous. Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 85–86 (1940); *Harris County Hosp. Dist. v. Textac Partners I*, 257 S.W.3d 303, 316 (Tex.App.-Houston [14th Dist.] 2008, no pet.). In other words, the legislative declaration that the use is presumptively public is binding on courts unless the use is "clearly and palpably" private. *Higginbotham*, 143 S.W.2d at 83. The entity's power to condemn is subject to judicial review, however, when there is a showing of bad faith, arbitrary or capricious action, or abuse of discretion. *Block House Mun. Util. Dist.*, 291 S.W.3d at 541; *see Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 268–69 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

■ The Texas Supreme Court also has held that when a statute vests a governmental agency with discretionary authority to condemn, the agency's determination of public necessity is presumptively correct. *FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 629 (Tex.2008). The condemnor generally determines how much land to take. *Zboyan v. Far Hills Util. Dist.*, 221 S.W.3d 924, 930 (Tex.App.-Beaumont 2007, no pet.) If a statute delegating the eminent-domain

power does not require proof of necessity, as is the case here, the condemnor need only show that its governing authority determined that the taking was necessary. *See Pizzitola v. Houston Indep. Sch. Dist.*, No. 13–05–249–CV, 2006 WL 1360838, at *5 (Tex.App.-Corpus Christi May 18, 2006, no pet.) (mem.op.); *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565 (Tex. App.-San Antonio 1999, pet. denied).

■ As with the "public use" requirement, this determination is conclusive unless there is a showing of bad faith, arbitrary or capricious action, or abuse of discretion. *See FKM P'ship, Ltd.*, 255 S.W.3d at 629; *Coastal Indus. Water Auth. v. Celanese Corp.*, 592 S.W.2d 597, 600 (Tex.1979). It is the nonmovant's burden, as the objecting party, to demonstrate that the school district's action was arbitrary and capricious. *Pizzitola*, 2006 WL 1360838, at *5 (citing *Austin v. City of Lubbock*, 618 S.W.2d 552, 555 (Tex.Civ.App.-Amarillo 1981), *rev'd on other grounds*, 628 S.W.2d 49 (Tex.1982)). A condemnee can make this showing if he can negate any reasonable basis the condemnor had in determining what and how much land to condemn. *Newsom*, 171 S.W.3d at 269.

■ However, the existence of another feasible plan not requiring condemnation is no evidence of an abuse of discretion. *Zboyan*, 221 S.W.3d at 930. Additionally, it is not arbitrary or capricious to base a condemnation on a reasoned prediction of future need or demand. *Pizzitola*, 2006 WL 1360838, at *5

---

1069, 1078–79 (Austin, Gammel Book Co. 1898). We are aware of and sensitive to the constitutional controversies that erupt when courts define "public use" too liberally; but as there are few public uses more legitimate than the construction of facilities for public education, no such concern arises here, aside from the evidentiary determination we ad-

dress below. "It is admitted by all that the cultivated mind is the guardian genius of democracy and, while guided and controlled by virtue, is the noblest attribute of man." Mirabeau B. Lamar, "the father of Texas education," address to Congress, 1838, *quoted in* Steven A. Jent, *A Browser's Book of Texas Quotations* 46 (2001).

(citing *Anderson v. Clajon Gas Co.*, 677 S.W.2d 702, 705 (Tex.App.-Houston [1st Dist.] 1984, no writ)). A condemnor also does not abuse its authority if it later changes its plans for the use of the land, and sells or devotes the excess to private use. *Vilbig v. Hous. Auth. of City of Dallas*, 287 S.W.2d 323, 330–31 (Tex.Civ. App.-Dallas 1955, writ ref'd n.r.e.). Furthermore, nothing in the condemnation statute prohibits the condemnor from altering its specific plan for the property after the commissioners' hearing even if the new plan allegedly prejudices the landowner. *See PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 476–79 (Tex.2008); *see also Blasingame v. Krueger*, 800 S.W.2d 391, 393–94 (Tex. App.-Houston [14th Dist.] 1990, no writ) (explaining evidence at a trial de novo is not limited to the evidence introduced at the commissioners' hearing).

1

■ In its first issue, Circle X contends the school district failed to meet its summary-judgment burden to conclusively establish that its governing body determined that Circle X's land was being taken for school purposes and that it was necessary. Specifically, Circle X contends that the only viable evidence the school district

presented about the condemnation proceeding was the minutes reflecting the board of trustees' decision to condemn the property. The minutes reflect that "the Board approved to start condemnation procedures (eminent domain) on 30 acres of land presently owned by Holmes Estate." Circle X argues these minutes are vague and state no purpose for the condemnation. Circle X also contends that, like pleadings, Circle X's affidavits cannot be evidence of an official action.[5]

Although the minutes do not expressly state the condemnation's purpose or necessity, the trial court properly considered all the evidence, including the affidavits, in concluding that the district in fact determined that the condemnation was for school purposes and a necessity. *See Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 685–86 (Tex.Civ.App.- Houston [14th Dist.] 1977, writ ref'd n.r.e.) (concluding that affidavits and depositions of condemnor entity's officers demonstrated that entity's board of directors made requisite determination of convenience and necessity); *Pizzitola*, 2006 WL 1360838, at *4–5 (reviewing, in addition to resolution, affidavits describing that the taking was appropriate, necessary, and in furtherance of a public purpose in concluding school district had articulated a reasonable and

---

**5.** This contention is the thrust of Circle X's argument in its motion for rehearing. Circle X maintains that when summary-judgment motions are heard in eminent-domain cases, only official proceedings, such as orders, resolutions, and minutes, may suffice as evidence of a condemning entity's official action. In making this argument, Circle X relies on *Whittington v. City of Austin*, 174 S.W.3d 889, 900 (Tex.App.-Austin 2005, pet. denied), and *Horton v. Mills County*, 468 S.W.2d 876, 877– 78 (Tex.Civ.App.-Austin 1971, no writ). Yet neither *Whittington* nor *Horton* holds that affidavits in which qualified affiants attest to official acts are incapable of demonstrating public use or necessity. Indeed, in *Whittington* the only evidence of the public use the

condemning entity offered was its pleadings, which plainly cannot be used as summary-judgment evidence. *Whittington*, 174 S.W.3d at 900. Furthermore, neither the statute under which the school district condemned Circle X's land, Tex. Educ.Code § 11.155, nor the eminent-domain statute itself, Tex. Prop. Code §§ 21.011–.016, states any specific requirement for the type of evidence necessary to prevail either at trial or on summary judgment. We will not add such a requirement here; it is not our realm to legislate, but only to apply the law. Finally, as set forth below, this court and others have long held evidence like that the school district submitted in this case sufficient to show the lawful exercise of eminent domain.

necessary public purpose for condemnation); *see also Boucher v. Tex. Turnpike Auth.*, 317 S.W.2d 594, 601–02 (Tex.Civ. App.-Texarkana 1958, no writ) (holding affidavit of condemning entity's engineer, along with certified copies of resolutions showing entity's approval of a survey and appraisal and instructions to acquire property "by purchase, if possible, and if not, by condemnation" supported partial summary judgment in favor of condemnor against landowner alleging fraud and bad faith).

The district's evidence in support of its motion for partial summary judgment included affidavits of Superintendent Bienski; Fred Patterson, a licensed architect employed by the district; and Anthony Scamardo, president of the district's board of trustees. The district also submitted Patterson's architectural drawings of the district's new facilities and an email from an architecture firm to Bienski explaining why the district needed to condemn thirty acres. Additionally, attached to its motion for reconsideration, the district included a supplemental affidavit and more drawings by Patterson. The district contends Bienski's, Scamardo's, and Patterson's affidavits all demonstrate the purposes of the land acquisition are within the meaning contemplated by the Texas Education Code.

In Bienski's first affidavit, he notes the increase in the student population and the need for physical-education and sports facilities. He also attests the board of trustees wanted to use the land "for the future development of school facilities (e.g. classrooms)." Bienski goes on to explain that Patterson believed the project required a minimum of thirty acres. In his second affidavit, Bienski describes how and when the board of trustees decided to condemn the property. According to Bienski, the board expected an increase in future enrollment and decided a new high school was needed to accommodate the growth. Bienski adds: "From my experience, training and knowledge, I was aware that there were recommendations that a high school campus would have a minimum requirement of thirty (30) acres ... Based on this information, I recommended [that the board] purchase and[,] in the absence of purchase, seek by condemnation the thirty (30) acre tract."

In Patterson's first affidavit, he emphasizes that the optimum size for a high school is thirty acres and includes the drawings of the district's proposed new facilities. He also states that he understands the board intends to use the land for the proposed sports and physical-education facilities. But he adds that if the district were unable to use the land for that purpose, Bienski told him it would be used for other educational purposes. In Patterson's supplemental affidavit, he mentions the board's plan to build a high school and includes a drawing featuring the new facility. Ultimately, Patterson attests to two proposed purposes for the condemned land—sports and recreation in the first affidavit and a new school in the second. Either purpose would be legitimate. *See, e.g., Lin v. Houston Cmty. Coll. Sys.*, 948 S.W.2d 328, 333–34 (Tex. App.-Amarillo 1997, writ denied) (explaining although the school pleaded the condemnation purpose was only for "school purposes," this was sufficient to allege its intended use).

Scamardo attests that on August 11, 2005, the board voted to condemn the thirty acres based on the long-range plans and educational needs of the district. According to Scamardo, the district's need for outdoor sports facilities was immediate. But he adds that the board also sought the land for a future new high school. Additionally, he explains that based on the

growth in the student population, the board of trustees also wanted to construct a separate high school.

To summarize, the school district's summary-judgment evidence includes: (1) minutes reflecting the board of trustees' decision to condemn the 30 acres; (2) Superintendent Bienski's affidavits; (3) Patterson's affidavits; and (4) board president Scamardo's affidavit. In their affidavits, Bienski and Scamardo both attest to (1) specific facts about efforts the board made to determine the need for the condemnation, and (2) the board's official act—ordering the condemnation to satisfy legitimate needs and purposes of the district. Circle X objected to none of the district's evidence.[6] We conclude this evidence conclusively shows that the district in fact determined that condemning Circle X's land was for a school purpose and necessary. We therefore overrule Circle X's first issue.

## 2

 In its second issue, Circle X contends that it raised a fact issue concerning whether the district acted arbitrarily and capriciously when it approved the start of condemnation proceedings because: (1) a federal court had enjoined the district from accepting transfer students; (2) the land's only purpose was for sports facilities, which did not warrant taking all thirty acres; and (3) even if the purpose were for constructing a high school, there is still no evidence to support the need for all thirty acres. Circle X argues that the

school district never intended to use the land for anything other than sports and recreation.

Circle X's summary-judgment evidence included the affidavit of Garcia Thibodeaux, a reporter for the *Hearne Democrat*. In his affidavit, Thibodeaux recounts a newspaper article he wrote in 2002, a copy of which is attached to his affidavit. The article featured a statement by Paul Bienski, the district's superintendent. Bienski conceded that the district did not need the entire sports complex—just the baseball and softball fields. Circle X's proof also included the affidavit of Jim Singleton, a licensed architect, who opined that 5.5 acres would be enough for just baseball and softball fields. But even if the initial use of Circle X's land may have been for sporting facilities, it is not arbitrary or capricious for the district to acquire land in anticipation of future needs. *See Pizzitola*, 2006 WL 1360838, at *5.

Another justification the district gave was the need for a new high school. Circle X argues there is no evidence to support such a need. And even if there were, Circle X continues, there is no evidence a new school would require thirty acres. Circle X maintains a federal-court ruling extinguished the district's new-high-school rationale. For many years leading up to the condemnation, a majority of the district's students were transferred from the Hearne Independent School District. Once a federal district court enjoined such transfers, Circle X argues, the district could no longer prove that it was growing

---

6. Because Circle X did not object to the district's affidavits, they are deemed to satisfy Rule 166a's requirement that affidavits "s et forth such facts as would be admissible in evidence." *See* Tex.R. Civ. P. 166a(f); *see also Dolenz v. A.B.*, 742 S.W.2d 82, 83–84 n. 2 (Tex.App.-Dallas 1987, writ denied). To the extent Circle X contends the affidavits are incompetent to prove official acts by the school district's board—because of some defect of form—Circle X should have objected and obtained rulings on those objections in the trial court. *Id.* As it stands, the affidavits are evidence of exactly what the school district needs evidence of: an official determination by the district's board "that the taking was necessary to advance its intended public use." *Whittington*, 174 S.W.3d at 904.

868

or in need of new classroom space. Circle X also included in its summary-judgment evidence the affidavits of Tommy Cowan, a licensed architect, and Gary Marek, a facility and transportation manager for the Texas Education Agency. Both affiants disputed the notion that a new high school for the district would require thirty acres.

Circle X's reliance on the Cowan and Marek affidavits is unavailing. Both affidavits dispute the existence of an industry standard requiring thirty acres for any new high school. But neither addressed the circumstances of this case specifically enough to raise a fact issue concerning whether the district had acted in an arbitrary and capricious manner. Moreover, it does not matter that the district changed its plan from a thirty-acre sports complex to a thirty-acre sports complex and new high school; nothing in the condemnation statute prohibits the condemnor from changing its specific plan for the property after the commissioners' hearing, even if the change allegedly prejudices the landowner. *PR Invs. & Specialty Retailers, Inc.*, 251 S.W.3d at 476–79. The amount of land remained the same and the new intended use was still allowable under the statute—"for the purpose of securing sites on which to construct school buildings or for any other purpose necessary for the district." *See* Tex. Educ.Code Ann. § 11.155(a).

We conclude that Circle X failed to satisfy its burden to show the district's taking was arbitrary and capricious. Accordingly, we overrule Circle X's second issue.

B

*Ingress and Egress*

 Circle X also argues the language in the trial court's judgment concerning its right to ingress and egress for the purpose of exploring, developing, drilling, or mining

for oil and gas is not supported by any evidence. Because it does not own the mineral rights, Circle X contends the language is inappropriate and should be stricken from the judgment. The district responds that if Circle X does not have any minerals rights, then the language has no effect and is harmless.

Circle X complains the language is confusing and allows the district to preclude any right of use of the surface for mineral development; however, the language still pertains only to the ingress and egress rights, if any, that Circle X owns. The final judgment provides:

Condemnor shall be vested with and shall have and recover of and from Condemnee all the fee simple absolute title and all right, title and interest for the purposes authorized under Section 11.155(a) of the Texas Education Code, providing that there is excluded from said estate all oil, gas and sulfur, which can removed from beneath the land, if any, without any rights whatsoever remaining to Condemnee of ingress and egress to and from the surface of the land for the purpose of exploring, developing, drilling, or mining same so as not to interfere with the improvements placed by Condemnor on said surface estate.

If Circle X is not the mineral owner, and therefore does not have any right to ingress or egress for development, exploring, drilling, or mining oil and gas, then this language in the judgment does not negatively affect Circle X. The language likewise does not negatively affect the actual owner of the mineral rights, because it expressly applies only to the condemnee— Circle X. Though it is inarticulately worded, we read the judgment to exclude Circle X's right, if any, to ingress and egress on the property for purposes of development, exploring, drilling, or mining oil and gas.

Because Circle X has no such right anyway, and because it has not cited any authority compelling us to alter the language, we overrule Circle X's third issue. Tex.R.App. P. 38.1(i).

\*　　\*　　\*

For the foregoing reasons, we affirm the trial court's judgment.