# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50931

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2017

Lyle W. Cayce
Clerk

JOHN P. BOERSCHIG

      Plaintiff - Appellant

v.

TRANS-PECOS PIPELINE, L.L.C.

      Defendant- Appellee

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Texas law allows a natural gas utility to condemn land for "public use." TEX. UTIL. CODE § 181.004; TEX. CONST. art. I, § 17(a).  Trans-Pecos Pipeline, LLC exercised that authority and initiated a condemnation proceeding to obtain a 50-foot wide permanent right-of-way and easement on John Boerschig's ranch.  The ranch is along the route of a 148-mile pipeline Trans-Pecos is constructing in west Texas that terminates at the Mexican border in the middle of the Rio Grande.

Boerschig contends that by ceding condemnation power to a private company, Texas eminent domain law offends due process.  His argument principally relies on the private nondelegation doctrine, a nook of Fourteenth

No. 16-50931

Amendment law long recognized but seldom invoked. The strength of this constitutional challenge is the central question we must decide in reviewing whether a federal court should enjoin the ongoing state condemnation process.

## I.

The pipeline Trans-Pecos is constructing—with the exception of the short section that crosses the Rio Grande and is thus subject to federal authority—is intrastate and thus governed by Texas law. To place a pipeline on land like Boerschig's ranch, Texas requires that the company first try to negotiate with the landowner. TEX. PROP. CODE § 21.0113.

Those negotiations failed, so Trans-Pecos invoked Texas eminent domain power via the following statute: "A gas or electric corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation." TEX. UTIL. CODE § 181.004; *see also Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 564–66 (Texas Ct. App.—San Antonio, 1998) (discussing the statutory scheme and noting that "courts have determined that a corporation operating a gas pipeline has the power of eminent domain if it devotes its private property and resources to public service and allows itself to be publicly regulated"). For statutes like this one that do not "specifically require[ ] a condemning agency to show the necessity for the condemnation," courts view the legislature as delegating to the condemning authority the question whether the taking is necessary. Elizabeth M. Bosek, et al., 32 TEX. JUR. 3d *Eminent Domain* § 103; *see Circle X Land & Cattle Co. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 864 (Tex. App.—Houston [14th Dist.], 2010). So before exercising its power to condemn, a gas utility must determine that the taking is necessary to further what both the Texas and federal constitutions require—a public purpose. *Anderson*, 985 S.W.2d at 565 (explaining that the company's board of directors usually makes this finding) (citing *Bevley v. Tenngasco Gas Gathering Co.*, 638 S.W.2d 118,

2

No. 16-50931

121 (Tex. Ct. App.—Corpus Christi, 1982, writ ref'd n.r.e.)). In the judicial review that may follow, this necessity determination is "conclusive, absent fraud, bad faith, abuse of discretion, or arbitrary or capricious action." *Anderson*, 985 S.W.2d at 565.[1]

Boerschig brought this lawsuit to stop that state review process, as Trans-Pecos had already initiated the condemnation proceeding. That proceeding begins with a state district court appointing special commissioners who assess the value of the property. *See City of Tyler v. Beck*, 196 S.W.3d 784, 786 (Tex. 2006). After the commissioners make that award, the condemnor can take control of the property. TEX. PROP. CODE § 21.021(a). If objections to the commissioners' award are filed, a case is opened in state court. *Tyler,* 196 S.W.3d at 786**.** It is during that judicial phase when the landowner may

---

[1] There appears to be some tension in the intermediate Texas courts about whether that limited standard of judicial review applies just to the "necessity" determination or to the related but distinct "public purpose" requirement. *Compare Circle X Land & Cattle Co.*, 325 S.W.3d at 864 (applying the "bad faith, arbitrary or capricious action, or abuse of discretion" standard to both the necessity and public use determination when the legislature delegates those determinations to another entity), *with Whittington v. City of Austin*, 174 S.W.3d 889, 897 (Tex. App.—Austin, 2005) (emphasizing that "public use ultimately remains a judicial question" even though some deference is due when a statute generally authorizes use of eminent domain for a purpose) (citing *Maher v. Lasater*, 354 S.W.2d 923, 925 (1962) ("[A] mere declaration by the Legislature cannot change a private use or private purpose into a public use or public purpose.")). We need not resolve this tension, however, as we conclude below that the scheme is probably not an unconstitutional delegation to private entities even under the standard that is most deferential to the utility—the one looking only at whether the use was "clearly and palpably private." *Circle X Land & Cattle Co.*, 325 S.W.3d at 864 (quoting *Housing Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 83 (Tex. 1940)). We nonetheless note that the Texas Supreme Court has recently emphasized the important role of judicial review of the public use requirement in a case involving a condemnation by a private pipeline. *Texas Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC*, 363 S.W.3d 192, 197–98 (Tex. 2012).

No. 16-50931

challenge the utility's finding of a public necessity. *See, e.g.*, *Anderson*, 985 S.W.2d at 566.

But before the commissioners issued a ruling from which Boerschig could have sought judicial review, Boerschig filed this federal suit and sought to enjoin the state condemnation proceeding. He asserted that Texas's eminent domain regime violates the Due Process Clause, both because it is a broad delegation of power to a private party and because it fails to provide for a predeprivation hearing.

The district court did not issue an injunction, holding that the requested relief would violate the Anti-Injunction Act, which prohibits federal courts from enjoining ongoing state proceedings. *See* 28 U.S.C. § 2283. After the district court ruling, the commissioners issued their valuation of $644,625, Boerschig filed his objections to the taking in state court, and Trans-Pecos took control of the property. Meanwhile, Boerschig filed this appeal of the federal district court's refusal to enjoin the condemnation proceedings.

## II.

Because Trans-Pecos has completed construction of the pipeline on Boerschig's ranch during the pendency of this appeal, Trans-Pecos believes it is too late for an injunction to issue. It thus asks us to dismiss the appeal as moot. We review questions concerning our jurisdiction—like whether a controversy has become moot—de novo. *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998).

A request for injunctive relief generally becomes moot when the event sought to be enjoined takes place. *Id.* But this rule has a well-established exception: when the defendant completes the act to be enjoined despite having notice of the request for injunctive relief, the plaintiff is not deprived of appellate review if the reviewing court can restore the status quo. *Porter v. Lee*, 328 U.S. 246, 251 (1946) (noting even then that the exception "has long

4

been established"); *see also Moore v. Cons. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.) (holding that a request for preliminary injunction is not moot when the court has the ability to "offer effective relief"). After the district court denied Boerschig's request for preliminary injunction, Trans-Pecos began construction on the pipeline. But we could, pursuant to the exception in *Porter*, order that Trans-Pecos return Boerschig's land to its precondemnation state. *See Bastian v. Lakefront Realty Corp.*, 581 F.2d 685, 691–92 (7th Cir. 1978) (holding that an appeal of a denial of preliminary injunction was not moot even when the property at issue had already been sold and leased to third parties, because the court had jurisdiction to compel restoration to the original property owner). Because we could offer this "effective relief," the controversy is not moot and we can consider the appeal. *See Moore*, 409 F.3d at 510.

### III.

As the events that have taken place since the district court ruling do not deprive us of jurisdiction, we consider whether an injunction should have issued. The district court denied Boerschig's application under the Anti-Injunction Act, which provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Rooted in federalism concerns, the statute sets a default rule that federal courts should not interrupt state court proceedings as any federal questions in those cases can ultimately be reviewed on appeal by the Supreme Court. *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Engineers,* 398 U.S. 281, 286–87 (1970). The district court held that the Act barred the injunction Boerschig seeks as it would enjoin a state condemnation process that culminates in a judicial proceeding. Boerschig argues this was error because the judicial phase of the condemnation

had not yet commenced. He characterizes the commissioners' role in assessing value, what the federal court would have directly enjoined, as the type of "nonjudicial function" to which the Anti-Injunction Act does not apply. *See, e.g.*, *Roudebush v. Hartke*, 405 U.S. 15, 21 (1972) (holding that recount commission appointed by a state court was performing nonjudicial function to which the Anti-Injunction Act did not apply).

The parties contest whether the Texas eminent domain scheme should be viewed as separate proceedings (in which case the Anti-Injunction Act would not bar a federal court from enjoining the distinct administrative process) or as one proceeding that morphs from an administrative phase into a judicial phase (in which case the Act would bar enjoining any part of the process as it culminates in a state court case). This is a difficult question given the unusual nature of the Texas scheme in which an "administrative proceeding converts into a judicial proceeding." *Beck*, 196 S.W.3d at 786. But we need not resolve it as there is an alternative basis for affirming the district court's refusal to grant the preliminary injunction. We can invoke this other avenue because the Anti-Injunction Act does not present a question of subject matter jurisdiction that we must answer before proceeding to other issues.[2] *Matter of*

---

[2] Trans-Pecos also contends that we should decline to exercise jurisdiction because of *Younger v. Harris*, 401 U.S. 37 (1971). But as the Supreme Court emphasized recently, *Younger* abstention should be exercised only in three "exceptional" circumstances: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Commc'ns., Inc. v. Jacobs,* 134 S. Ct. 584, 588 (2013). Although Trans-Pecos asserts that eminent domain proceedings fall under the third category, these proceedings look unlike the cases cited in *Sprint* as exemplary of the category. *See Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977) (applying *Younger* abstention to a challenge to a state court's contempt order); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14 (1987) (applying *Younger* abstention to a request to enjoin a state judgment, after a state jury had already rendered a verdict). *Younger* does not apply.

*Mooney Aircraft, Inc.*, 730 F.2d 367, 372 (5th Cir. 1984) ("The Anti-Injunction Act is not a jurisdictional statute, but goes only to the granting of a particular form of equitable relief.").

The alternative basis for affirming is that Boerschig cannot meet the demanding standard for the issuance of an injunction. Although we generally can affirm on any alternative ground raised below, *Saucier v. Warden*, 47 F.3d 426 (5th Cir. 1995) (citing *Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990)); *see also Helvering v. Gowran*, 302 U.S. 238, 245 (1937), Boerschig argues that the district court's failure to make any factual findings prevents us from considering the equitable injunction factors in the first instance. *See* FED. R. CIV. P. 52(a)(2). But a district court's failure to make Rule 52(a) findings does not deprive us of jurisdiction to review the injunction request. *See, e.g.*, *Davis v. United* States, 422 F.3d 1139, 1141 (5th Cir. 1970) ("[C]ompliance with Rule 52(a) is not a jurisdictional requirement for appeal."). We have noted that "[w]hen the record can be intelligently reviewed, the absence of factual findings may be overlooked by the appellate court," *Brown v. Vance*, 637 F.2d 272, 280–81 (5th Cir. 1981), and that "[w]hether a full understanding is possible goes 'not . . . to jurisdiction but to our discretion,'" *Golf City, Inc. v. Wilson Sporting Goods, Inc.*, 555 F.2d 426, 434 (5th Cir. 1977). That full understanding is possible here because on the first requirement for the issuance of an injunction—whether the movant can show a substantial likelihood of success on the merits, *Planned Parenthood of Houston & Se. Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005), Boerschig's challenge presents purely legal issues.[3] His attack on the Texas condemnation scheme does not

---

[3] Trans-Pecos also raised this issue as an alternative basis for affirming, so Boerschig had full notice that we might consider it. Although he did not take the opportunity to address the merits in his reply brief, we have considered the briefing in the trial court on the request for injunctive relief.

rely on any particulars about Boerschig's ranch or Trans-Pecos's pipeline. The strength of his due process challenge is something we evaluate de novo, and efficiency supports us doing so now, lest we remand on the question only to face another appeal of the injunction ruling down the road. And because we conclude that Boerschig's constitutional challenge is a longshot at best, we need not reach the other injunction factors for which factual findings may play a role. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Planned Parenthood*, 403 F.3d at 329 (both stating that a preliminary injunction should issue only if the movant establishes all four requirements).

Why do we conclude that Boerschig's claims face such a steep climb? For starters, Texas eminent domain laws are longstanding,[4] and have withstood previous legal challenges. *See, e.g., Joiner v. City of Dallas*, 380 F. Supp. 754, 766–78 (N.D. Tex. 1974), *aff'd*, 419 U.S. 1042 (1974)[5]; *Smart v. Texas Power & Light Co.*, 525 F.2d 1209, 1210 (5th Cir. 1976). Some of these cases expressly reject one of Boerschig's arguments: that due process requires that Texas afford Boerschig a court hearing before his land is taken. Recall that Texas law allows a condemnor to enter the land immediately after the commissioners assess the amount of just compensation, before the courts hear the landowner's

---

[4] A commentator notes that Texas has given condemnation authority to private companies since the oil and gas industry emerged in the early twentieth century. Amanda Buffington Niles, *Eminent Domain and Pipelines in Texas*: *It's As Easy As 1, 2, 3—Common Carriers, Gas Utilities, and Gas Corporations*, 16 TEX. WESLEYAN L. REV. 271, 280 (2010). A version of the statute at issue here delegating condemnation authority to natural gas companies dates back to at least 1967. *See Anderson*, 985 S.W.2d at 564 (citing Act of May 26, 1967, 60th Leg., R.S. ch. 306, § 1, 1967 Tex. Gen. Laws 730).

[5] *Joiner* was decided under the since-repealed statute requiring that constitutional challenges to state laws be heard by a three-judge panel with a right of direct appeal to the Supreme Court. *See Gov't of V.I. v. 19.623 Acres of Land*, 536 F.2d 566, 676 (3rd Cir. 1976) (noting that the Supreme Court's affirmance of *Joiner*, even without an opinion explaining the basis for that order, is precedential).

challenge to the taking. This "quick take" system, which exists in a number of other states,[6] is "an expeditious procedure whereby possession of property may quickly be had for its application to public use." *City of Houston v. Plantation Land Co.*, 440 S.W.2d 691, 695 (Tex. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). This prevents protracted condemnation litigation involving one or a few landowners from delaying a larger public project. Leslie A. Fields & Karen L. Brody, *Owner's Defenses and Quick Take Statutes*, SL050 ALI-ABA 39, 41 (2006). The Supreme Court and this court have repeatedly held that such "'quick taking' without a prior hearing is consistent with due process." *Joiner*, 380 F. Supp. at 772, *aff'd* 419 U.S. 1042 (1974); *Smart*, 525 F.2d at 1211 (citing *Dohany v. Rogers*, 281 U.S. 362 (1930); *Georgia v. Chattanooga*, 264 U.S. 472 (1924); *Joslin Manufacturing Co. v. Providence*, 262 U.S. 668 (1923); and *Bragg v. Weaver*, 251 U.S. 57 (1919)). So precedent blocks Boerschig's argument that he has a right to a predeprivation hearing.

Boerschig's other claim—that Texas's eminent domain scheme is an unconstitutional delegation of power to private entities—has not been asserted in these prior cases. Trans-Pecos says the reason is that the nondelegation doctrine "has seldom been used, and indeed has often been declared deceased." *Consumer Energy Council of Amer. v. FERC*, 673 F.2d 425, 448 n.82 (D.C. Cir. 1982). But Trans-Pecos addresses a different nondelegation doctrine, the one that prevents Congress from delegating too much authority to executive branch agencies. *See generally Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001). We need not address the vitality of that nondelegation doctrine as it is rooted in federal separation-of-powers concerns that cannot dictate how state governments allocate their powers.

---

[6] *See* JULIUS L. SACKMAN, NICHOLS ON EMINENT DOMAIN § 24.10[2][a] (3d ed. 2017) (collecting states statutes).

No. 16-50931

Boerschig's nondelegation claim arises from a constitutional provision that does apply to states: the Due Process Clause.  U.S. CONST. amend. XIV. Like the doctrine that prevents Congress from delegating too much power to agencies, this doctrine preventing governments from delegating too much power to private persons and entities is of old vintage, not having been used by the Supreme Court to strike down a statute since the early decades of the last century.  Alexander Volokh, *The New Private-Regulation Skepticism: Due Process, Non-Delegation, and Antitrust Challenges*, 37 HARV. J.L. & PUB. POL'Y 931, 941–43 (2014).  Although this so-called "private nondelegation" doctrine has been largely dormant in the years since, its continuing force is generally accepted.  *See General Elec. Co. v. New York State Dept. of Labor*, 936 F.2d 1448, 1455 (2d Cir. 1991) (noting that the private nondelegation doctrine remains good law); Volokh, *supra*, at 944 (surveying recent cases to conclude that the doctrine remains "alive and well").

A review of the three Supreme Court cases that held statutes unconstitutional for delegating power to private parties provides a flavor of the doctrine.  The first ordinance allowed two-thirds of property owners on a block to determine whether a setback line near the street should be established in front of which no construction could take place.  *Eubank v. City of Richmond*, 226 U.S. 137, 140–41 (1912).  The second required a property owner to obtain consent from two-thirds of nearby property owners in order to build a home for the poor.  *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 118–19 (1928).  The third was a New Deal measure that allowed the producers of more than two-thirds (once again the magic supermajority these laws used) of annual coal production negotiating with a majority of miners to set wages and hours for all operators and miners in the area.  *Carter v. Carter Coal Co.*, 298 U.S. 238, 310–11 (1936).  *Roberge* summarized well the problem with such laws:

No. 16-50931

> The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority— uncontrolled by any standard or rule prescribed by legislative action—to prevent the trustee from using its land for the proposed home.  The superintendent is bound by the decision or inaction of such owners.  There is no provision for review under the ordinance; their failure to give consent is final.  They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice.

*Roberge*, 278 U.S. at 121–22.  To put it in the words of the constitutional guarantee, when private parties have the unrestrained ability to decide whether another citizen's property rights can be restricted, any resulting deprivation happens without "process of law."

The Texas scheme allowing gas pipelines to condemn property does not appear to suffer from either of the twin ills that doomed these zoning and wage-setting laws.  It imposes a standard to guide the pipeline companies—that the taking is necessary for "public use"—and provides judicial review of that determination that prevents the company from having the final say.   In contrast to the "public use" determination that the board of a pipeline company must render before a condemnation proceeds,[7] no standard existed to guide whether the neighbors should limit the construction in *Eubank* or *Roberge*. The existence of a standard like the one Texas has for exercising eminent domain has prevented courts from finding that a delegation to private parties involves the unfettered discretion that violates due process.  *See General Elec. Co.*, 936 F.2d at 1455 ("These opinions still stand for the proposition that a legislative body may not constitutionally delegate to private parties the power to determine the nature of rights to property in which other individuals have a property interest, without supplying standards to guide the private parties'

---

[7] *Rice Land Partners, Ltd.*, 363 S.W.3d at 194–95 (citing TEX. CONST. art. I, § 17(a)).

No. 16-50931

discretion."); *see also Biener v. Calio*, 361 F.3d 206, 216 (3rd Cir. 2004) (holding that delegation to political parties to set filing fees for primaries was constitutional because the legislature set the upper limit on the fees).

What is more, a utility's assessment of whether the public necessity standard has been satisfied is subject to judicial review. To be sure, that review is deferential. As we have discussed, the state court does not determine "public use" or "necessity" as an original matter, but only reviews the pipeline's decision for either "fraud, bad faith, abuse of discretion, or arbitrary or capricious action." *Anderson*, 985 S.W.2d at 565; *see Malcomson Road Utility Dist. v. Newsom*, 171 S.W.3d 257, 273 (Tex. Ct. App.—Houston [1st Dist.] 2005, reh'ing overruled) (finding a fact issue as to whether a district arbitrarily used its discretion in condemning land for a ditch expansion). Although seemingly feeble, this judicial review captures precisely the situations in which a private delegation deprives a property owner of due process: when the private parties may make a decision based "solely for their own interest, or even capriciously." *Eubank*, 226 U.S. at 144. Texas courts may review, for example, whether a taking "confer[red] only a private benefit." Bosek, *supra* § 103. And the arbitrary and capricious review governing condemnations is essentially the substantive due process standard in which the private nondelegation doctrine is rooted. *See Synar v. United States*, 626 F. Supp. 1374, 1383 n.8 (D.D.C. 1986) (recognizing that *Carter Coal* is a substantive due process case); *Shelton v. City of College Station*, 780 F.2d 475, 479–80 (5th Cir. 1986) (noting that state ordinances satisfy rational basis review unless they are arbitrary). So the judicial oversight of a pipeline's condemnation power further distinguishes this case from the *Eubank-Roberge-Carter Coal* situation in which the actions of the private party are unreviewable. *Cf. Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 610 (6th Cir. 2006) (holding that a regulation requiring private party consent to obtain a prerequisite for a license did not violate due

No. 16-50931

process when a government official could waive that prerequisite). Indeed, similar judicial review provisions are the reason a federal district court recently held that a challenge to Ohio's delegation of condemnation authority to pipelines is unlikely to succeed. *Cox v. State of Ohio*, 2016 WL 4507779, at *10 (N.D. Ohio Aug. 29, 2016).[8]

We reach the same conclusion with respect to the Texas scheme. The significant differences between the Texas delegation and those delegations the Supreme Court has held unconstitutional mean that Boerschig's due process challenge faces long odds. His inability to establish a likelihood of success, much less a substantial one, means he is not entitled to a preliminary injunction.

* * *

The motion to dismiss on mootness grounds is DENIED. The denial of the application for a preliminary injunction is AFFIRMED.

---

[8] Under Ohio law, when the pipeline passes a resolution "declaring the necessity for the appropriation" as Trans-Pecos did here, a rebuttable presumption of that necessity is created. *Cox*, 2016 WL 4507779 at *2 (citing OHIO REV. CODE § 163.09(B)(1)(a)).