Opinion of August 31, 2010 Withdrawn, Affirmed
and Substitute Opinion on Rehearing filed November 16, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00330-CV



Circle X Land
and Cattle Company, LTD., Appellant 

v.

Mumford
Independent School District, Appellee 



On Appeal from
the 82nd District Court

Robertson County, Texas

Trial Court
Cause No. 06-09-17,614CV



 

SUBSTITUTE OPINION ON REHEARING

We
originally issued our opinion affirming the trial court’s judgment on August
31, 2010.  Appellant Circle X Land & Cattle Company, Ltd., moved for rehearing. 
We overrule the motion for rehearing, vacate our August 31 judgment, withdraw
our previous opinion, and issue this substitute opinion in its place.  Our
disposition of the appeal is unchanged.  

This
case arises out of a school district’s condemnation of thirty acres of ranch
land in Robertson County.  Circle X is appealing the trial court’s grant of
Mumford Independent School District’s motion for partial summary judgment. 
Circle X contends the school district failed to meet its burden to prove as a
matter of law it was entitled to the summary judgment because it did not
establish there was a public purpose for the condemnation or that the condemnation
of all thirty acres was necessary.  Circle X argues that its response to the
motion for partial summary judgment raised fact issues about whether the school
district acted arbitrarily or capriciously in condemning the land.  Finally,
Circle X complains the trial court erred in including in its judgment a clause
stating Circle X does not have the right to ingress and egress on the condemned
property for the purpose of exploring, developing, drilling, or mining for oil
and gas.  We affirm.

I

            In
2002, Mumford Independent School District and Robertson County expressed their
desire to acquire thirty acres of land to develop a sports and recreation
complex.  When the county decided to withdraw from the deal, the school
district did not proceed with the acquisition.  But the school district revisited
the idea three years later, and on August 11, 2005, its board of trustees voted
to start condemnation proceedings.  A panel of three special commissioners
reviewed the district’s petition and approved the condemnation of thirty acres
of Circle X’s land.  Circle X sued in district court claiming the school
district had acted arbitrarily and capriciously in deciding to condemn the
land.

            The
school district filed a motion for partial summary judgment, which the trial
court denied.  But after the district moved for reconsideration, the trial
court granted the motion.  After the partial summary judgment was granted, the
school district and Circle X agreed on the amount of just compensation for the thirty
acres.  The trial court then signed a final judgment in favor of the district.  This
appeal followed.    

II

We
review the trial court’s summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  Here, the appellee
moved for a traditional summary judgment.  See Tex. R. Civ. P. 166a(c). 
The party moving for a traditional summary judgment has the burden to show that
no material fact issue exists and that it is entitled to summary judgment as a
matter of law.  Tex. R. Civ. P. 166a(c); M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  We will
assume that all evidence favorable to the non-movant is true and indulge every
reasonable inference in favor of the non-movant.  KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A
non-movant has the burden to respond to a traditional summary-judgment motion
if the movant conclusively (1) establishes each element of its cause of action
or defense, or (2) negates at least one element of the non-movant’s cause of
action or defense.  See Little v. Tex. Dep’t of Criminal Justice, 148
S.W.3d 374, 381 (Tex. 2004); Brownlee v. Brownlee, 665 S.W.2d 111, 112
(Tex. 1984).  

Although
the school district claims in its brief that it moved for both a traditional
and a no-evidence summary judgment, the motion itself is ambiguous.  Compare
Tex. R. Civ. P. 166a(c), with Tex. R. Civ. P. 166a(i).  Circle X
contends that because the district’s motion was ambiguous, we should construe it
as a traditional motion for summary judgment.  The two summary-judgment
standards are distinct; therefore, we must determine which type of summary
judgment is at issue.  Grimes v. Reynolds, 252 S.W.3d 554, 558 (Tex.
App.—Houston [14th Dist.] 2008, no pet.).  In Grimes v. Reynolds, we
held “[s]ince a motion that does not clearly and unambiguously state it is
being filed under Rule 166a(i) does not give the non-movant notice that the
movant is seeking a no-evidence summary judgment, we will construe it as a
traditional motion under Rule 166a(c).”  Id.  Here, as in Grimes,
we will construe the summary judgment to be a traditional motion.[1]   

Additionally,
when a motion for reconsideration or new trial is filed after a summary-judgment
motion is heard and ruled upon, the trial court may ordinarily consider only
the record as it existed before hearing the motion the first time.  See Auten
v. DJ Clark, Inc., 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.]
2006, no pet.); Chapman v. Mitsui Eng’g & Shipbuilding Co., 781
S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, writ denied).  However,
the trial court may consider evidence submitted with a motion for
reconsideration so long as it affirmatively indicates in the record that it
accepted or considered the evidence.  Auten, 209 S.W.3d at 702; see
also Tex. R. Civ. P. 166a(c) (summary-judgment evidence must be timely
filed, “except on leave of court”).  

Here,
after the trial court originally denied the school district’s motion for
partial summary judgment, it granted the motion to reconsider and rendered
partial summary judgment.  The court’s order reflects that in so doing, it “considered
the affidavits and exhibits submitted by Condemnor and Condemnee on the [motion
for reconsideration] and the arguments and authority of counsel.”  The trial
court, therefore, considered the arguments and evidence presented in the motion
to reconsider and response.  Thus, we may review the same to determine whether
the trial court erred in ultimately granting the school district’s motion for
partial summary judgment.[2] 
See Stephens v. Dolcefino, 126 S.W.3d 120, 133–34 (Tex. App.—Houston
[1st Dist.] 2003), pet. denied, 181 S.W.3d 741 (Tex. 2005).

A

Condemnation

            The
school district’s eminent-domain powers are statutorily derived from section
11.155 of the Texas Education Code.  See Tex. Educ. Code § 11.155. 
Section 11.155(a) provides that “[a]n independent school district may, by
exercise of the right of eminent domain, acquire the fee simple title to real
property for the purpose of securing sites on which to construct school
buildings or for any other purpose necessary for the district.”  Id. §
11.155(a).  A district court may determine all issues, including the authority
to condemn property and assess damages, in any proceeding for eminent domain
involving a political subdivision of the state.  Tex. Prop. Code Ann. § 21.003
(Vernon 2004).[3]


The
Texas Supreme Court has held that private property may be taken only for public
use.  Borden v. Trespalacios Rice & Irrigation Co., 98 Tex. 494, 86
S.W. 11, 15 (1905).  What is public use is a question of law.[4]  Tenngasco
Gas Gathering Co. v. Fischer, 653 S.W.2d 469, 474 (Tex. App.—Corpus
Christi 1983, writ ref’d n.r.e.).  But when the legislature delegates to an
entity the power to condemn, and the entity condemns the property for public
use, the extent to which the property is taken is a legislative question.  Block
House Mun. Util. Dist. v. City of Leander, 291 S.W.3d 537, 541 (Tex.
App.—Austin 2009, no pet.); see Hous. Auth. of City of Dallas v.
Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 85–86 (1940); Harris County
Hosp. Dist. v. Textac Partners I, 257 S.W.3d 303, 316 (Tex. App.—Houston
[14th Dist.] 2008, no pet.).  In other words, the legislative declaration that
the use is presumptively public is binding on courts unless the use is “clearly
and palpably” private.  Higginbotham, 143 S.W.2d at 83.  The entity’s
power to condemn is subject to judicial review, however, when there is a
showing of bad faith, arbitrary or capricious action, or abuse of discretion.  Block
House Mun. Util. Dist., 291 S.W.3d at 541; see Malcomson Rd. Util. Dist.
v. Newsom, 171 S.W.3d 257, 268–69 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied).   

            The
Texas Supreme Court also has held that when a statute vests a governmental
agency with discretionary authority to condemn, the agency’s determination of
public necessity is presumptively correct.  FKM P’ship, Ltd. v. Bd.
of Regents of the Univ. of Houston Sys., 255 S.W.3d 619, 629 (Tex. 2008).
 The condemnor generally determines how much land to take.  Zboyan v.
Far Hills Util. Dist., 221 S.W.3d 924, 930 (Tex. App.—Beaumont 2007, no
pet.)  If a statute delegating the eminent-domain power does not require proof
of necessity, as is the case here, the condemnor need only show that its
governing authority determined that the taking was necessary.  See Pizzitola
v. Houston Indep. Sch. Dist., No. 13-05-249-CV, 2006 WL 1360838, at *5
(Tex. App.—Corpus Christi May 18, 2006, no pet.) (mem. op.); Anderson v. Teco
Pipeline Co., 985 S.W.2d 559, 565 (Tex. App.—San Antonio 1999, pet.
denied).  

            As
with the “public use” requirement, this determination is conclusive unless
there is a showing of bad faith, arbitrary or capricious action, or abuse of
discretion.  See FKM P’ship, Ltd., 255 S.W.3d at 629; Coastal Indus.
Water Auth. v. Celanese Corp., 592 S.W.2d 597, 600 (Tex. 1979).  It is the
nonmovant’s burden, as the objecting party, to demonstrate that the school
district’s action was arbitrary and capricious.  Pizzitola, 2006 WL
1360838, at *5 (citing Austin v. City of Lubbock, 618 S.W.2d 552, 555
(Tex. Civ. App.—Amarillo 1981), rev’d on other grounds, 628 S.W.2d 49
(Tex. 1982)).  A condemnee can make this showing if he can negate any
reasonable basis the condemnor had in determining what and how much land to
condemn.  Newsom, 171 S.W.3d at 269.    

            However,
the existence of another feasible plan not requiring condemnation is no evidence
of an abuse of discretion.  Zboyan, 221 S.W.3d at 930.  Additionally, it
is not arbitrary or capricious to base a condemnation on a reasoned prediction
of future need or demand.  Pizzitola, 2006 WL 1360838, at *5 (citing Anderson
v. Clajon Gas Co., 677 S.W.2d 702, 705 (Tex. App.—Houston [1st Dist.] 1984,
no writ)).  A condemnor also does not abuse its authority if it later changes
its plans for the use of the land, and sells or devotes the excess to private
use.  Vilbig v. Hous. Auth. of City of Dallas, 287 S.W.2d 323, 330–31
(Tex. Civ. App.—Dallas 1955, writ ref’d n.r.e.).  Furthermore, nothing in the
condemnation statute prohibits the condemnor from altering its specific plan
for the property after the commissioners’ hearing even if the new plan
allegedly prejudices the landowner.  See PR Invs. & Specialty
Retailers, Inc. v. State, 251 S.W.3d 472, 476–79 (Tex. 2008); see also
Blasingame v. Krueger, 800 S.W.2d 391, 393–94 (Tex. App.—Houston [14th
Dist.] 1990, no writ) (explaining evidence at a trial de novo is not limited to
the evidence introduced at the commissioners’ hearing).  

1

In
its first issue, Circle X contends the school district failed to meet its
summary-judgment burden to conclusively establish that its governing body
determined that Circle X’s land was being taken for school purposes and that it
was necessary.  Specifically, Circle X contends that the only viable evidence the
school district presented about the condemnation proceeding was the minutes reflecting
the board of trustees’ decision to condemn the property.  The minutes reflect
that “the Board approved to start condemnation procedures (eminent domain) on
30 acres of land presently owned by Holmes Estate.”  Circle X argues these
minutes are vague and state no purpose for the condemnation.  Circle X also
contends that, like pleadings, Circle X’s affidavits cannot be evidence of an
official action.[5]
 

Although
the minutes do not expressly state the condemnation’s purpose or necessity, the
trial court properly considered all the evidence, including the affidavits, in
concluding that the district in fact determined that the condemnation was for
school purposes and a necessity.  See Houston Lighting & Power
Co. v. Fisher, 559 S.W.2d 682, 685–86 (Tex. Civ. App.—Houston [14th Dist.]
1977, writ ref’d n.r.e.) (concluding that affidavits and depositions of
condemnor entity’s officers demonstrated that entity’s board of directors made
requisite determination of convenience and necessity); Pizzitola, 2006
WL 1360838, at *4–5 (reviewing, in addition to resolution, affidavits
describing that the taking was appropriate, necessary, and in furtherance of a
public purpose in concluding school district had articulated a reasonable and
necessary public purpose for condemnation); see also Boucher v. Tex.
Turnpike Auth., 317 S.W.2d 594, 601–02 (Tex. Civ. App.—Texarkana 1958, no
writ) (holding affidavit of condemning entity’s engineer, along with certified
copies of resolutions showing entity’s approval of a survey and appraisal and
instructions to acquire property “by purchase, if possible, and if not, by
condemnation” supported partial summary judgment in favor of condemnor against
landowner alleging fraud and bad faith).

The
district’s evidence in support of its motion for partial summary judgment
included affidavits of Superintendent Bienski; Fred Patterson, a licensed
architect employed by the district; and Anthony Scamardo, president of the
district’s board of trustees.  The district also submitted Patterson’s
architectural drawings of the district’s new facilities and an email from an
architecture firm to Bienski explaining why the district needed to condemn thirty
acres.  Additionally, attached to its motion for reconsideration, the district
included a supplemental affidavit and more drawings by Patterson.  The district
contends Bienski’s, Scamardo’s, and Patterson’s affidavits all demonstrate the
purposes of the land acquisition are within the meaning contemplated by the
Texas Education Code.  

In
Bienski’s first affidavit, he notes the increase in the student population and
the need for physical-education and sports facilities.  He also attests the
board of trustees wanted to use the land “for the future development of school
facilities (e.g. classrooms).” Bienski goes on to explain that Patterson believed
the project required a minimum of thirty acres.  In his second affidavit,
Bienski describes how and when the board of trustees decided to condemn the
property.  According to Bienski, the board expected an increase in future
enrollment and decided a new high school was needed to accommodate the growth. 
Bienski adds: “From my experience, training and knowledge, I was aware that
there were recommendations that a high school campus would have a minimum
requirement of thirty (30) acres . . . Based on this information, I recommended
[that the board] purchase and[,] in the absence of purchase, seek by
condemnation the thirty (30) acre tract.”  

In
Patterson’s first affidavit, he emphasizes that the optimum size for a high
school is thirty acres and includes the drawings of the district’s proposed new
facilities.  He also states that he understands the board intends to use the
land for the proposed sports and physical-education facilities.  But he adds that
if the district were unable to use the land for that purpose, Bienski told him it
would be used for other educational purposes.  In Patterson’s supplemental
affidavit, he mentions the board’s plan to build a high school and includes a
drawing featuring the new facility.  Ultimately, Patterson attests to two
proposed purposes for the condemned land—sports and recreation in the first
affidavit and a new school in the second.  Either purpose would be legitimate. 
See, e.g., Lin v. Houston Cmty. Coll. Sys., 948 S.W.2d 328, 333–34 (Tex.
App.—Amarillo 1997, writ denied) (explaining although the school pleaded the
condemnation purpose was only for “school purposes,” this was sufficient to
allege its intended use).  

            Scamardo
attests that on August 11, 2005, the board voted to condemn the thirty acres
based on the long-range plans and educational needs of the district.  According
to Scamardo, the district’s need for outdoor sports facilities was immediate. 
But he adds that the board also sought the land for a future new high school.  Additionally,
he explains that based on the growth in the student population, the board of
trustees also wanted to construct a separate high school.

            To
summarize, the school district’s summary-judgment evidence includes:  (1)
minutes reflecting the board of trustees’ decision to condemn the 30 acres; (2)
Superintendent Bienski’s affidavits; (3) Patterson’s affidavits; and (4) board
president Scamardo’s affidavit.  In their affidavits, Bienski and Scamardo both
attest to (1) specific facts about efforts the board made to determine the need
for the condemnation, and (2) the board’s official act—ordering the
condemnation to satisfy legitimate needs and purposes of the district.  Circle
X objected to none of the district’s evidence.[6] 
We conclude this evidence conclusively shows that the district in fact
determined that condemning Circle X’s land was for a school purpose and
necessary.  We therefore overrule Circle X’s first issue.

2

            In
its second issue, Circle X contends that it raised a fact issue concerning
whether the district acted arbitrarily and capriciously when it approved the
start of condemnation proceedings because: (1) a federal court had enjoined the
district from accepting transfer students; (2) the land’s only purpose was for
sports facilities, which did not warrant taking all thirty acres; and (3) even
if the purpose were for constructing a high school, there is still no evidence
to support the need for all thirty acres.  Circle X argues that the school
district never intended to use the land for anything other than sports and
recreation.  

            Circle
X’s summary-judgment evidence included the affidavit of Garcia Thibodeaux, a reporter
for the Hearne Democrat.  In his affidavit, Thibodeaux recounts a
newspaper article he wrote in 2002, a copy of which is attached to his
affidavit.  The article featured a statement by Paul Bienski, the district’s
superintendent.  Bienski conceded that the district did not need the entire
sports complex—just the baseball and softball fields.  Circle X’s proof also
included the affidavit of Jim Singleton, a licensed architect, who opined that 5.5
acres would be enough for just baseball and softball fields.  But even if the initial
use of Circle X’s land may have been for sporting facilities, it is not
arbitrary or capricious for the district to acquire land in anticipation of
future needs.  See Pizzitola, 2006 WL 1360838, at *5.  

Another
justification the district gave was the need for a new high school.  Circle X
argues there is no evidence to support such a need.  And even if there were,
Circle X continues, there is no evidence a new school would require thirty
acres.  Circle X maintains a federal-court ruling extinguished the district’s
new-high-school rationale.  For many years leading up to the condemnation, a
majority of the district’s students were transferred from the Hearne
Independent School District.  Once a federal district court enjoined such
transfers, Circle X argues, the district could no longer prove that it was
growing or in need of new classroom space.  Circle X also included in its
summary-judgment evidence the affidavits of Tommy Cowan, a licensed architect, and
Gary Marek, a facility and transportation manager for the Texas Education
Agency.  Both affiants disputed the notion that a new high school for the
district would require thirty acres. 

Circle
X’s reliance on the Cowan and Marek affidavits is unavailing.  Both affidavits
dispute the existence of an industry standard requiring thirty acres for any
new high school.  But neither addressed the circumstances of this case
specifically enough to raise a fact issue concerning whether the district had
acted in an arbitrary and capricious manner.  Moreover, it does not matter that
the district changed its plan from a thirty-acre sports complex to a thirty-acre
sports complex and new high school; nothing in the condemnation statute
prohibits the condemnor from changing its specific plan for the property after
the commissioners’ hearing, even if the change allegedly prejudices the
landowner.  PR Invs. & Specialty Retailers, Inc., 251 S.W.3d at
476–79.  The amount of land remained the same and the new intended use was
still allowable under the statute—“for the purpose of securing sites on which
to construct school buildings or for any other purpose necessary for the
district.” See Tex. Educ. Code Ann. § 11.155(a).  

We
conclude that Circle X failed to satisfy its burden to show the district’s
taking was arbitrary and capricious.  Accordingly, we overrule Circle X’s
second issue.  

B

Ingress
and Egress

            Circle
X also argues the language in the trial court’s judgment concerning its right
to ingress and egress for the purpose of exploring, developing, drilling, or
mining for oil and gas is not supported by any evidence.  Because it does not
own the mineral rights, Circle X contends the language is inappropriate and
should be stricken from the judgment.  The district responds that if Circle X
does not have any minerals rights, then the language has no effect and is
harmless.    

Circle X complains the language is confusing and
allows the district to preclude any right of use of the surface for mineral development;
however, the language still pertains only to the ingress and egress rights, if
any, that Circle X owns.  The final judgment provides:

Condemnor shall be vested with and shall have and recover
of and from Condemnee all the fee simple absolute title and all right, title
and interest for the purposes authorized under Section 11.155(a) of the Texas
Education Code, providing that there is excluded from said estate all oil, gas
and sulfur, which can removed from beneath the land, if any, without any rights
whatsoever remaining to Condemnee of ingress and egress to and from the surface
of the land for the purpose of exploring, developing, drilling, or mining same
so as not to interfere with the improvements placed by Condemnor on said
surface estate.

If Circle X is not the
mineral owner, and therefore does not have any right to ingress or egress for
development, exploring, drilling, or mining oil and gas, then this language in
the judgment does not negatively affect Circle X.  The language likewise does
not negatively affect the actual owner of the mineral rights, because it
expressly applies only to the condemnee—Circle X.  Though it is inarticulately
worded, we read the judgment to exclude Circle X’s right, if any, to ingress
and egress on the property for purposes of development, exploring, drilling, or
mining oil and gas.  Because Circle X has no such right anyway, and because it
has not cited any authority compelling us to alter the language, we overrule
Circle X’s third issue.  Tex. R. App. P. 38.1(i).

* * *








For
the foregoing reasons, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.









[1]
Furthermore, during oral argument, the school district’s counsel conceded the
motion for partial summary judgment invoked only the traditional
summary-judgment standard.  





[2]
Neither party has complained that the trial court considered any evidence that
it should not have.  Both parties supplemented the summary-judgment record at
the motion-for-reconsideration stage without objecting to any untimeliness of
the other’s filings or any lack of notice.  





[3]
One prominent exception to this general rule is Harris County, where the
legislature has vested this authority exclusively in the county civil courts at
law.  Tex. Gov’t Code § 25.1032(c) (Vernon 2004); Taub v. Aquila Sw.
Pipeline Corp., 93 S.W.3d 451, 456 (Tex. App.—Houston [14th Dist.] 2002, no
pet.).





[4]
The term “public use” has been defined various ways, and the Texas Supreme
Court has construed “public use” liberally.  See Coastal States Gas
Producing Co. v. Pate, 158 Tex. 171, 309 S.W.2d 828, 833 (1958). 
Nevertheless, “public use” need not be defined liberally to encompass the
taking of land for public education.  The preeminent importance our state
places on public education dates back to the days of the Republic of Texas.  See
Repub. Tex. Const. of 1836, General Provisions, § 5, reprinted in 1
H.P.N. Gammel, The Laws of Texas 1822–1897, at 1069, 1078–79 (Austin,
Gammel Book Co. 1898).  We are aware of and sensitive to the constitutional
controversies that erupt when courts define “public use” too liberally; but as
there are few public uses more legitimate than the construction of facilities
for public education, no such concern arises here, aside from the evidentiary
determination we address below.  “It is admitted by all that the cultivated
mind is the guardian genius of democracy and, while guided and controlled by
virtue, is the noblest attribute of man.”  Mirabeau B. Lamar, “the father of
Texas education,” address to Congress, 1838, quoted in Steven A. Jent, A
Browser’s Book of Texas Quotations 46 (2001).





[5]
This contention is the thrust of Circle X’s argument in its motion for
rehearing.  Circle X maintains that when summary-judgment motions are heard in
eminent-domain cases, only official proceedings, such as orders, resolutions,
and minutes, may suffice as evidence of a condemning entity’s official action. 
In making this argument, Circle X relies on Whittington v. City of Austin,
174 S.W.3d 889, 900 (Tex. App.—Austin 2005, pet. denied), and Horton v.
Mills County, 468 S.W.3d 876, 877–78 (Tex. Civ. App.—Austin 1971, no
writ).  Yet neither Whittington nor Horton holds that affidavits
in which qualified affiants attest to official acts are incapable of
demonstrating public use or necessity.  Indeed, in Whittington the only
evidence of the public use the condemning entity offered was its pleadings,
which plainly cannot be used as summary-judgment evidence.  Whittington,
174 S.W.3d at 900.  Furthermore, neither the statute under which the school
district condemned Circle X’s land,  Tex. Educ. Code § 11.155, nor the
eminent-domain statute itself, Tex. Prop. Code §§ 21.011-.016, states any
specific requirement for the type of evidence necessary to prevail either at
trial or on summary judgment.  We will not add such a requirement here; it is
not our realm to legislate, but only to apply the law.  Finally, as set forth
below, this court and others have long held evidence like that the school
district submitted in this case sufficient to show the lawful exercise of
eminent domain. 





[6]
Because Circle X did not object to the district’s affidavits, they are deemed
to satisfy Rule 166a’s requirement that affidavits “set forth such facts as
would be admissible in evidence.”  See Tex. R. Civ. P. 166a(f); see
also Dolenz v. A.B., 742 S.W.2d 82, 83–84 n.2 (Tex. App.—Dallas
1987, writ denied).  To the extent Circle X contends the affidavits are
incompetent to prove official acts by the school district’s board—because of
some defect of form—Circle X should have objected and obtained rulings on those
objections in the trial court.  Id.  As it stands, the affidavits are
evidence of exactly what the school district needs evidence of:  an official
determination by the district’s board “that the taking was necessary to advance
its intended public use.”  Whittington, 174 S.W.3d at 904.