**Opinion issued August 20, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00096-CV

————————————

## IN RE ESTATE OF CAROLYN F. MOONEY, Deceased

---

**On Appeal from the Probate Court No 1**
**Harris County, Texas**
**Trial Court Case No. 458,180**

---

## MEMORANDUM OPINION

In this probate dispute, appellee Charles Achord sought to admit the will of his mother, Carolyn F. Mooney, to probate and to be named independent administrator of her estate. Appellant, Dan Reardon, intervened and sought a declaratory judgment that he and Mooney had been informally married since 1997.

Achord moved for summary judgment, arguing that, regardless of whether an informal, or "common-law," marriage between Mooney and Reardon had existed, Reardon had settled, waived, or released any claim he may have had to Mooney's property due to an "Agreement Dissolving Partnership" that Mooney and Reardon had entered into in 2005. The trial court rendered summary judgment in favor of Achord and dismissed Reardon's petition in intervention.

In two issues, Reardon argues that the trial court erred in granting summary judgment because (1) Achord's summary judgment motion did not address Reardon's claim of an informal marriage to Mooney; and (2) the "Agreement Dissolving Partnership" only addressed any interest Reardon may have had in Mooney's property, but it did not address his interest in their community property resulting from their informal marriage, and therefore the Agreement could not serve as the basis for summary judgment.

We affirm.

## Background

Carolyn F. Mooney died on May 23, 2017, at the age of 71. The day after she passed away, her only son, Charles Achord, filed an application to probate her will, executed on July 27, 2009, and to be appointed independent executor of her estate. Achord alleged in the application that Mooney was not married at the time of her death and that no marriage involving Mooney was dissolved after the date of her

will. Mooney's will included the following statement under a heading entitled "Identity of the Family": "At the time of the execution of this Will I am not married, however, I have a companion whose name is DAN REARDON and I have one child whose name is CHARLES W. ACHORD." Mooney devised her entire estate to Achord, with the provision that if Achord did not survive her, $40,000 would go to Reardon and the remainder of her estate would go to a man named Jeffrey Witt.

On June 16, 2017, before the trial court admitted the will to probate, Reardon filed a petition in intervention. Reardon alleged that, although they had never formally married, he was Mooney's surviving spouse. He alleged that he met Mooney in 1997, that they quickly began a personal relationship, that "shortly thereafter" they agreed to be married, and that they "constantly held each other out as married" until Mooney's death. Reardon also alleged that he and Mooney had started a trucking business together, CFM Trucking, Inc., and both of them were listed as signatories on the company's bank account. According to Reardon, he and Achord did not get along, and Achord caused trouble in Reardon's relationship with Mooney, leading to a brief separation. Reardon alleged that he and Mooney "quickly reunited" and they did not get divorced, although Mooney did remove Reardon as a signatory on the company's bank account. Reardon sought declarations from the trial court that (1) he informally married Mooney in 1997; (2) he was Mooney's husband at the time of her death; and (3) he was entitled to one-half of his and Mooney's

3

community estate. Reardon also sought the imposition of a constructive trust over the assets that constituted his portion of the community estate.

In a separate filing, Reardon objected to the appointment of Achord as the independent executor. Reardon alleged that Achord had been "hostile" to him since before Mooney's death, that, following Mooney's death, Achord had disconnected at least one utility at the home Reardon and Mooney had shared, and that Achord denied that Reardon had an interest in Mooney's estate. He argued, "[Achord] would be an unsuitable executor of [Mooney's] will until such time as the merits of [Reardon's] assertion of his interest in [Mooney's] estate as her common-law spouse are decided."

Achord moved to strike Reardon's petition in intervention, arguing that Reardon lacked standing to intervene in the administration of Mooney's estate because he was not an "interested person" in the estate and had no justiciable interest in the proceedings. In this pleading, Achord acknowledged that Mooney and Reardon had had a personal relationship, but he alleged that Mooney had never considered herself to be married to Reardon. He attached several exhibits, including deeds, deeds of trust, the July 27, 2009 will, and federal income tax returns in which Mooney referred to herself as a "single woman" or as "single."

4

Achord also attached a document entitled "Agreement Dissolving Partnership" (the Agreement) that was dated April 22, 2005, and was signed by both Mooney and Reardon. The Agreement stated, in relevant part:

## AGREEMENT DISSOLVING PARTNERSHIP

Carolyn Faye Mooney, a single woman and as CFM Trucking Inc., referred to in this agreement as the First Partner, and Dan Reardon, a single man, referred to in this agreement as the Second Partner, agree to follows:

## ARTICLE 1

## RECITALS

Alleged Partnership

1.01. Alleged First Partner [Mooney], residing at [Mooney's address], and CFM Trucking Inc. is a corporation wholly owned by Carol[yn] Faye Mooney and operating under the laws of the State of Texas, with [its] principal place of business being Harris County Texas and alleged Second Partner [Reardon], residing in Harris County Texas[,] have been since 1999 and now are alleged Partners both personally and professionally in all joint business dealings either under the name of Carolyn Faye [Mooney] and or CFM Trucking Inc. Even though[] there were no and is no business relationship in existence between the parties, the alleged First Partner Carolyn Faye Mooney both individually and as President of CFM Trucking, Inc. recognize[s] that there was a personal relationship with alleged [S]econd Partner that was a benefit to her and her Corporation CFM Trucking, Inc. In order to fairly compensate the Second Partner for his efforts that benefitted Carolyn Faye Mooney as well as CFM Trucking, Inc. the First Partner (Grantee) is voluntarily entering into this agreement with the Second Partner (Grantor) and in return the Second Partner for the Consideration, Grantor quitclaims to Grantee all of Grantor's right, title, and interest in and to any Property of the First alleged Partner Carolyn Faye Mooney and CFM Trucking, Inc including but not limited to stock, trucks, real estate, bank accounts, accounts receivables to have and to

5

hold it to Grantee and Grantee's heirs, successors, and assigns forever. Neither Grantor nor Grantor's heirs, successors, or assigns will have, claim, or demand any right or title to the Property or any part of it.

Mooney and Reardon agreed to dissolve the alleged partnership, effective April 15, 2005, and Mooney agreed to pay Reardon $100,000 and to transfer title to three vehicles to him. The Agreement stated, "This Agreement shall be binding on and inure to the benefit of the parties and their respective heirs, executors, administrators, legal representatives, successors, and assigns when permitted by this Agreement." The Agreement also included a provision stating that it "supersedes any prior understandings or written or oral agreements between the parties respecting the subject matter of this Agreement." Both Mooney and Reardon signed the Agreement, and underneath the blanks for their respective signatures, the Agreement stated, "CAROLYN FAYE MOONEY, a single woman, individually And as President of CFM Trucking, Inc.," and "DAN REARDON, a single man."

The trial court denied Achord's motion to strike Reardon's petition in intervention.

On September 5, 2017, Achord answered Reardon's petition in intervention, specifically denying Reardon's allegation that he had been Mooney's common-law spouse. He also asserted the affirmative defenses of "compromise and settlement" and "release/waiver," stating, "Regardless of whether any marriage may have existed, [Reardon] compromised and settled any claims he may have to Carolyn's

6

estate in the 'Agreement Dissolving Partnership' dated April 22, 2005 . . . ." Achord also sought a declaration from the trial court that (1) no marriage, whether formal or informal, existed between Reardon and Mooney, and (2) regardless of whether a marriage existed, Reardon "compromised and settled any claims he may have to any part of Carolyn's estate in the 'Agreement Dissolving Partnership' dated April 22, 2005, which was made binding upon [Reardon] and inured to [Achord's] benefit."

## A.    *Summary Judgment Proceedings*

Achord then moved for traditional summary judgment. The motion stated:

The scope of the motion relates to the following:

A.    [Achord's] affirmative defense of compromise and settlement;

B.    [Achord's] affirmative defense of release/waiver; and

C.    [Achord's] request for declaratory judgment that regardless of whether any common law marriage existed, which [Achord] strenuously denies, [Reardon] compromised, settled, waived, or released any claims or rights, title, and interest he may have to any part of Carolyn's estate in the "Agreement Dissolving Partnership" dated April 22, 2005, which was made binding upon [Reardon] and inured to [Achord's] benefit.

Achord acknowledged that Mooney had had a personal relationship with Reardon, but he argued that they did not agree to be married and that Mooney never considered herself to be married to Reardon. As summary judgment evidence, Achord attached his affidavit, the Agreement, a warranty deed Mooney executed in January 2006, Mooney's July 27, 2009 will, Mooney's federal income tax returns for 2010 and 2012–2016, and Reardon's 2014 federal income tax return. Achord pointed out that,

7

in all of these documents, Mooney and Reardon referred to themselves as "single." Achord also argued that there was no fact issue that, through the Agreement, Reardon released any claims he may have had to Mooney's property and, therefore, Achord was entitled to declaratory judgment as a matter of law.

In his response to Achord's summary judgment motion, Reardon argued that Achord had not challenged Reardon and Mooney's informal marriage, and instead asserted only that he had established his affirmative defenses of compromise and settlement, release, and waiver. Reardon also argued that the Agreement, which formed the basis for Achord's affirmative defenses, was a "business-related document," and it was not "a divorce decree, marital property agreement, or any other such document that would affect [Reardon's] interest in or right to his own share of the couple's community property." He argued that his claims were "for his community property interest" and were not affected by the Agreement, in which Reardon quitclaimed his right, title, and interest in Mooney's property.

Reardon attached as summary judgment evidence his affidavit and the affidavit of Donna Waggoner. Reardon averred as follows:

> I met Carolyn F. Mooney in 1997. After a few months, we moved in together, and shortly after that, we agreed to be married. We began referring to ourselves as married, and told other people that we were married. We also introduced each other as husband and wife from this time forward.
>
> In addition to our marriage, Carolyn and I jointly started a trucking company, CFM Trucking, Inc. We were co-signatories on the

company's bank accounts. Carolyn primarily handled the finances and the paperwork, while I focused on the hands-on work and running the business itself.

Charles Achord, Carolyn's son, disliked me and disapproved of my marriage to his mother. He constantly tried to drive a wedge between us and turn Carolyn against me. He also interfered with the operations of CFM.

Charles still denies my marriage to his mother. He has threatened to remove me from my home at [Mooney's address], where I lived with [Mooney] for most of our marriage. He has also threatened that I will receive nothing of my share of the community property from Carolyn's estate.

Waggoner, a long-time friend of Mooney's, averred:

I have known Carolyn Faye Mooney ("Faye") since we were in junior high school together. I grew up with her and her sisters. We have had a friendship for decades.

I was introduced to Dan Reardon at Faye's brother's funeral. It was clear that Faye and Dan were very much in love. They soon moved in together and began living together as husband and wife. They took care of a dog together as a married couple would, and always gave every indication that they were married.

Faye referred to Dan as her husband. I remember specifically in 2012, I met Dan when they drove up together on Dan's motorcycle to the camp ground. I liked the motorcycle, so Dan let me ride it. I told Faye afterwards, 'He's nice.' She said to me, 'My husband's a nice guy.'

Achord filed a reply, stating that he did contend that Reardon and Mooney had not been informally married. He argued, with respect to the informal marriage claim, that occasional introductions as husband and wife were insufficient to establish that the couple held themselves out as being married. He also stated, "[T]he particular issue before the Court on the motion for summary judgment is [Reardon's]

9

release of *any rights or claims* he may have to [Mooney's] estate, including any alleged homestead right or right to have exempt property set aside." He argued:

> [Reardon] contends the [A]greement is not a valid "partition" agreement. However, [Achord] does not contend the agreement is a "partition" agreement, because the agreement *on its face* is between a "single man" and a "single woman." The agreement is, however, a settlement of any claims [Reardon] may have *to any of [Mooney's] property*. Because the property was necessarily [Mooney's] separate property at the time of the agreement, [Reardon] did, in fact, release any claim he may have to her property from which his alleged "community" interest would have originated. Although the agreement is not a pre-marital agreement, since there was no marriage, even if it were to be construed as such, [Reardon] waived any homestead right in [Mooney's] property pursuant to such agreement.

Achord argued that the Agreement was valid, enforceable, and supported by consideration, and that it "involve[d] all of [Mooney's] property since it was all separate property."

The trial court granted Achord's summary judgment motion. The order granting the motion included the following statement:

> It is further . . . DECLARED that Intervenor, DAN REARDON, compromised, settled, waived, or released any claims or rights, title, and interest he may have to any part of Decedent's estate in the "Agreement Dissolving Partnership" dated April 22, 2005, which was made binding upon Intervenor and inured to Movant's benefit.

## B.    *Motion for Clarification, Reconsideration, and New Trial*

Reardon filed a "Motion for Clarification, and Motion for Reconsideration and for New Trial." In this motion, Reardon argued that the summary-judgment order did not dispose of his request for declaratory judgment that he was Mooney's

10

common-law spouse, nor could the trial court have granted such relief because Achord did not request relief on that basis in his summary judgment motion. Reardon requested that the trial court clarify its order "to specifically state that the summary judgment did not affect his request for declaratory judgment that he and [Mooney] were informally married." He also reiterated his argument that the Agreement did not compromise, settle, release, or waive any interest he had in the couple's community property estate. He argued that he had presented some evidence that he and Mooney were informally married, and, therefore, his community property interest could only be partitioned by an agreement that met specific requirements in the Family Code, which the Agreement did not. He argued that the Agreement had no effect on his claim "to his own portion of the community property in this lawsuit," which was not Mooney's property.

As evidence supporting this motion, Reardon attached the Agreement, his affidavit that he had submitted with his prior request for injunctive relief and his response to Achord's summary judgment motion, the affidavit of Donna Waggoner, and the affidavit of Lee Carpenter, another long-time friend of Mooney's. Although Reardon's and Waggoner's affidavits had been submitted in response to Achord's summary judgment motion, Carpenter's had not. Carpenter averred that, around the time Reardon and Mooney started their own trucking company, they "moved in together and began referring to each other as husband and wife." Carpenter further

11

averred that Mooney "would regularly introduce [Reardon] to people she met as her husband" and "[a]nyone the couple met socially knew or were told that they were husband and wife."

On January 3, 2018, the trial court denied Reardon's motion for clarification, reconsideration, and new trial. That same day, the trial court issued a final summary judgment order that stated:

In granting the motion for summary judgment, the Court found that:

1.  There were no genuine issues of material fact and Charles Achord proved his affirmative defense of compromise and settlement to the claim set forth in the Petition in Intervention filed by DAN REARDON as [a] matter of law;

2.  There were no genuine issues of material fact and Charles Achord proved his affirmative defense of release/waiver to the claim set forth in the Petition in Intervention filed by DAN REARDON [as a] matter of law; and

3.  There were no genuine issues of material fact and Charles Achord proved as a matter of law his request for declaratory judgment that regardless of whether any common law marriage existed, Intervenor compromised, settled, waived, or released any claims or rights, title, and interest he may have to any part of Decedent's estate in the "Agreement Dissolving Partnership" dated April 22, 2005, which was made binding upon Intervenor and inured to Charles' benefit. It is therefore

ORDERED, ADJUDGED, and DECREED that a declaratory judgment is entered as follows:

[Reardon] compromised, settled, waived, or released any claims or rights, title, and interest he may have to any part of Decedent's estate in the "Agreement Dissolving Partnership" dated April 22, 2005, which was made

12

binding upon Intervenor and inured to Charles Achord's benefit.

It is further

ORDERED, ADJUDGED, and DECREED that Dan Reardon shall take nothing on any claims in his Petition for Intervention due to the affirmative defenses thereto, and the claims in the Petition in Intervention are DENIED.

Also on that same day, the trial court signed an order admitting Mooney's July 27, 2009 will to probate and appointing Achord as the independent executor of her estate.

Reardon filed a second motion for new trial. The trial court denied the motion and this appeal followed.

## Summary Judgment

In his first issue, Reardon contends that the trial court erred in granting summary judgment in favor of Achord because Achord's summary judgment motion did not address Reardon's claim that an informal marriage existed between him and Mooney. Reardon also argues in his first issue that he raised a fact issue on the existence of an informal marriage. In his second issue, Reardon argues that the trial court erred in granting summary judgment because the Agreement relied upon by Achord addresses only Mooney's property and not Reardon's community property interest and a fact issue exists regarding the characterization of his and Mooney's property.

13

### A.    *Standard of Review*

We review a trial court's ruling on a summary judgment motion de novo. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258 (Tex. 2018). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *City of Richardson*, 539 S.W.3d at 258–59. When a party moves for summary judgment on his own claim, he must establish each essential element of his cause of action as a matter of law. *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 717 (Tex. App.—Dallas 2014, pet. denied). For a defendant to be entitled to traditional summary judgment, the defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Williams v. Bell*, 402 S.W.3d 28, 35 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). If the movant meets his burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam); *see also First United Pentecostal Church of Beaumont v. Parker*, 514

S.W.3d 214, 220 (Tex. 2017) (stating that fact issue exists if evidence rises to level that would enable reasonable and fair-minded people to differ in their conclusions) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We review the evidence presented in the motion and response in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Helix Energy Sols. Grp., Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017).

## B.  *Evidence Included in Summary Judgment Record*

As an initial matter, we address whether evidence that Reardon attached to his motion for clarification, reconsideration, and new trial and that he relies upon on appeal to contend that he raised a fact issue concerning whether he was informally married to Mooney—specifically, the affidavit of Lee Carpenter—was properly part of the summary judgment record, such that we can consider the evidence in our analysis on appeal.

"After a court grants a summary judgment motion, the court generally has no obligation to consider further motions on the issues adjudicated by the summary judgment." *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston

15

[1st Dist.] 2009, pet. denied). When a party files a motion for reconsideration or new trial after the trial court hears and rules on a motion for summary judgment, the court may ordinarily consider only the record as it existed before hearing the summary judgment motion for the first time. *Circle X Land & Cattle Co. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). However, the trial court may consider evidence submitted with a motion for reconsideration if the trial court affirmatively indicates in the record that it accepted or considered the evidence. *Circle X Land & Cattle Co.*, 325 S.W.3d at 863; *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Stephens v. Dolcefino*, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see also* TEX. R. CIV. P. 166a(c) (providing that summary judgment evidence may be filed late but only with leave of court); *PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 731 (Tex. App.—San Antonio 2014, pet. denied) (stating that trial court has discretion to refuse to consider new evidence attached to motion to reconsider summary judgment ruling).

An order denying a motion for new trial following a summary judgment ruling does not "affirmatively indicate" that the trial court accepted or considered newly-filed evidence when the order denying the motion for new trial states that the court "considered the motion, all responses, and argument of counsel, but does not state it considered the evidence attached to the motion" for new trial. *McMahan v.*

16

*Greenwood*, 108 S.W.3d 467, 500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see NMRO Holdings, LLC v. Williams*, No. 01-16-00816-CV, 2017 WL 4782793, at *5 (Tex. App.—Houston [1st Dist.] Oct. 24, 2017, no pet.) (mem. op.) (holding that trial court did not affirmatively indicate in record that it accepted or considered new evidence attached to motion to reconsider summary judgment ruling when order denying motion stated, "The Court has considered the motion for new trial and motion for reconsideration of [the summary judgment], any response, the arguments of counsel, and the papers on file. The Court believes the motion should be DENIED"); *Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (mem. op.) (holding that trial court did not affirmatively indicate in record that it accepted or considered new evidence attached to motion to vacate summary judgment ruling when court's order denying motion to vacate stated, "Having considered said motion as well as all responses and arguments regarding the same, the motion is here[by] DENIED"); *cf. Circle X Land & Cattle Co.*, 325 S.W.3d at 863 (holding that trial court affirmatively indicated that it considered new evidence attached to motion to reconsider when order granting motion stated that court "considered the affidavits and exhibits submitted . . . on the [motion for reconsideration] and the arguments and authority of counsel"); *Stephens*, 126 S.W.3d at 134 (holding that trial court affirmatively indicated that it considered new evidence when court ruled that it "will include the

evidence offered today in the summary judgment record" and denied motion for new trial "even taking this evidence into the record").

This Court has also noted that a trial court's statement in an order denying a motion to reconsider a summary judgment ruling that the court considered "evidence" is "consistent with the rule that on motion for reconsideration, a court may consider only the record as it existed when the court first ruled on the motion for summary judgment." *Foussadier v. Triple B Servs., LLP*, No. 01-18-00106-CV, 2019 WL 2127604, at *5–6 (Tex. App.—Houston [1st Dist.] May 16, 2019, no pet. h.) (mem. op.) (noting, in holding that trial court did not affirmatively indicate that it considered new evidence filed with motion for reconsideration after summary judgment ruling, that while order denying motion for reconsideration recited that court considered "evidence," order did not state that court considered evidence attached to motion for reconsideration or that court considered specific item of new evidence attached to motion for reconsideration); *see also McMahan*, 108 S.W.3d at 500 ("Generally, a party may not rely on new evidence in a motion for new trial without showing that the evidence was newly discovered and could not have been discovered through due diligence prior to the ruling on a summary judgment motion.").

In this case, in response to Achord's summary judgment motion, Reardon attached as summary judgment evidence two affidavits: his own affidavit and one

from Donna Waggoner. The trial court rendered summary judgment in favor of Achord. Subsequently, Reardon filed a motion for clarification, reconsideration, and new trial, and he attached several exhibits as evidence, including the affidavit of Lee Carpenter. Reardon acknowledged that he did not attach this affidavit to his summary judgment response. *See* TEX. R. CIV. P. 166a(c) (providing that summary judgment evidence may be filed late but only with leave of court). The record does not include an order from the trial court stating that it granted Reardon leave to late-file this evidence. The trial court denied Reardon's motion for reconsideration and stated in the order: "On this day, the Court heard and considered the Motion filed by Intervenor DAN REARDON for Clarification and Motion for Reconsideration and for New Trial with respect to this Court's Order Granting Motion for Summary Judgment dated November 20, 2017, and the Court finds that the motion should be denied."

Based on prior precedent from this Court, we conclude that the trial court did not affirmatively indicate on the record that it accepted or considered the evidence—specifically, Lee Carpenter's affidavit—attached to Reardon's motion for reconsideration when it ruled on that motion.[1] We therefore cannot consider

---

[1]     In contrast to the language in the order denying Reardon's motion for reconsideration, the trial court's final summary judgment order, issued the same day that the court denied the motion for reconsideration, stated:

19

Carpenter's affidavit on appeal in determining whether Reardon raised a fact issue on the question whether he had been informally married to Mooney. *See NMRO Holdings*, 2017 WL 4782793, at \*5 ("Because the court did not affirmatively indicate that it accepted or considered the later-filed evidence attached to NMRO's motions for new trial and reconsideration, we cannot consider this evidence in our examination of the partnership factors."); *Wakefield*, 2016 WL 4536454, at \*7 ("Because the trial court *did not* "affirmatively indicate[]" on the record that it accepted or considered the later-filed evidence attached to Barrett's motion to vacate, we cannot consider Barrett's affidavit in determining whether a genuine issue of material fact exists regarding his attorney's authority to bind him to the settlement agreement.").

---

On November 15, 2017, the Court heard and considered the Motion for Summary Judgment filed by CHARLES ACHORD and the response thereto by Intervenor DAN REARDON and, after considering the motion, the response, the summary judgment evidence, and the argument of counsel, the Court found that there was no genuine issue of material fact and that Charles Achord was entitled to judgment as a matter of law [on] all grounds set forth in the motion and entered an order granting [the] motion for summary judgment on November 20, 2017. Intervenor DAN REARDON filed a motion for clarification and motion for reconsideration and for new trial which the Court has denied by separate order.

The court thus affirmatively stated that it considered summary judgment evidence in conjunction with making its initial summary judgment ruling. The court did not affirmatively state that it considered any evidence—much less Carpenter's affidavit attached to Reardon's motion for reconsideration—when it denied Reardon's motion for reconsideration.

*C.* *Analysis*

Family Code section 2.401 provides that an informal marriage may be proved by evidence that the parties "agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a)(2); *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied). "The statutory requirement of 'represented to others' is synonymous with the judicial requirement of 'holding out to the public.'" *Eris v. Phares*, 39 S.W.3d 708, 714–15 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (quoting *Winfield v. Renfro*, 821 S.W.2d 640, 648 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). The party seeking to establish the existence of the informal marriage bears the burden of proving the three elements by a preponderance of the evidence. *Small v. McMaster*, 352 S.W.3d 280, 282–83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). An informal marriage does not exist until the concurrence of all three elements. *Id.* at 283.

An agreement to be informally married may be established by direct or circumstantial evidence. *Assoun*, 493 S.W.3d at 160; *see Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993) (stating that each element of claim for informal marriage may be established by circumstantial, as well as direct, evidence). Evidence of cohabitation and "holding out" in some cases may constitute some evidence of an agreement to be married, but the evidence of holding out "must be particularly

convincing to be probative of an agreement to be married." *Assoun*, 493 S.W.3d at 160; *Eris*, 39 S.W.3d at 714 (stating that, to establish element of agreement to be married, evidence must show parties intended to have present, immediate, and permanent marital relationship). Testimony of one of the parties to the marriage constitutes some direct evidence that the parties agreed to be married. *Small*, 352 S.W.3d at 283.

A person's occasional informal references to another as his spouse do not prove an agreement to be married, and "[c]ircumstantial evidence can entirely fail to overcome direct evidence from both members of the alleged marriage that there is no agreement to be married." *Assoun*, 493 S.W.3d at 160. Similarly, the "holding out" element of an informal marriage "requires more than occasional references to each other as 'wife' and 'husband,'" and "a couple's reputation in the community as being married is a significant factor in determining the holding out element." *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.); *see Small*, 352 S.W.3d at 285 ("Whether the evidence is sufficient to establish that a couple held themselves out as husband and wife turns on whether the couple had a reputation in the community for being married."). "Proving a reputation for being married requires evidence that the couple 'consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married.'" *Small*, 352 S.W.3d at 285. The holding out element may be established by the conduct and

actions of the parties, and spoken words are not necessary to establish representation as husband and wife. *Eris*, 39 S.W.3d at 715.

Here, Reardon intervened in the proceedings to admit Mooney's will to probate, alleging that he and Mooney had been informally married and, thus, that he had a community property interest in her estate. Achord, Mooney's son, moved for summary judgment, arguing that Reardon had compromised, settled, released, or waived any interest he had in Mooney's property when he signed the Agreement in 2005. In response, Reardon argued that the Agreement did not release his community property interest in Mooney's estate that he obtained due to their informal marriage, and he attached his affidavit and the affidavit of Donna Waggoner, a friend of Mooney's, to raise a fact issue on the question of an informal marriage.

Reardon's summary judgment reflects, at most, that he and Mooney occasionally referred to each other as spouses. Reardon averred, without providing supporting facts, that he and Mooney "told other people that we were married" and they "also introduced each other as husband and wife from this time forward." *See Nichols v. Lightle*, 153 S.W.3d 563, 570–71 (Tex. App.—Amarillo 2004, pet. denied) (holding that statement in affidavit that "we held out to others that we were husband and wife" simply paraphrased statutory language, affidavit provided no specific factual basis for statement, statement was conclusory and, therefore, did not raise fact issue on representation element of alleged informal marriage to others).

23

Waggoner averred that Mooney and Reardon "began living together as husband and wife" and "always gave every indication that they were married," but she did not provide details such as how Mooney and Reardon did this, and she related only one specific instance in which Mooney referred to Reardon as her husband.

As stated above, occasional introductions or references to each other as spouses are not sufficient to establish the holding out element. *See Small*, 352 S.W.3d at 285; *Smith*, 285 S.W.3d at 910. Instead, there must be some evidence that the couple had a reputation in the community for being married. *Small*, 352 S.W.3d at 285. This showing requires evidence that the couple consistently conducted themselves as spouses in the public eye or that the community viewed them as married. *Id.*; *Smith*, 285 S.W.3d at 910; *see also Danna v. Danna*, No. 05-05-00472-CV, 2006 WL 785621, at *1–2 (Tex. App.—Dallas Mar. 29, 2006, no pet.) (mem. op.) (noting that although putative wife seeking to establish informal marriage presented evidence from four witnesses that they had heard putative wife and putative husband refer to each other as spouses, plus evidence of AARP enrollment form signed by putative husband naming putative wife as spouse and promissory note and deed of trust executed by parties with putative wife listing her last name as putative husband's last name, no evidence demonstrated that parties consistently conducted themselves as husband and wife in public or that community viewed them as married, and therefore trial court did not err in granting directed verdict in putative

24

husband's favor). Reardon's summary judgment evidence indicates that he and at least one friend viewed him and Mooney to be spouses, but there is no evidence in the summary judgment record concerning their reputation in the larger community for being married. *See Small*, 352 S.W.3d at 285 (noting, in reversing jury verdict finding informal marriage, that all of putative wife's evidence supporting informal marriage "came from her personal circle of acquaintances whose testimony provides little, if any, indication of [the couple's] reputation in the community" and that there was no testimony that couple "had a reputation in the wider community as being married").

The summary judgment record also includes the Agreement. The Agreement, dated April 22, 2005, stated that "there were no and is no business relationship in existence between" Mooney and Reardon, but Mooney "recognize[d] that there was a personal relationship with alleged second Partner [Reardon] that was a benefit to her" and her business. The parties agreed to "dissolve their alleged Partnership," and Mooney agreed to pay Reardon $100,000 and transfer three vehicles to him. Reardon unequivocally quitclaimed to Mooney all of his "right, title, and interest in and to any Property" of Mooney's and her business "to have to hold it to [Mooney] and [her] heirs, successors, and assigns forever." The Agreement stated, "Neither [Reardon] nor [his] heirs, successors, or assigns will have, claim, or demand any right or title to the Property or any part of it." The Agreement twice states, in the

25

opening paragraph and underneath the parties' signatures, that Mooney is "a single woman" and Reardon is "a single man." Reardon has not challenged the validity and enforceability of the Agreement, either in the trial court or on appeal. The trial court based its summary judgment ruling on the Agreement, entering a judgment declaring that Reardon "compromised, settled, waived, or released any claims or rights, title, and interest he may have to any part of [Mooney's] estate" in the Agreement and dismissing Reardon's petition in intervention.

Moreover, Mooney's will, executed in 2009, twelve years after Reardon alleges he and Mooney began their personal relationship in 1997, contains Mooney's express statement, "At the time of the execution of this Will I am not married . . . ." And the summary judgment exhibits included not only the Agreement and the will but deeds, deeds of trust, and federal income tax returns, in all of which Mooney expressly referred to herself as a "single woman" or "single." Reardon produced no evidence to contravene these formal written declarations by Mooney.

We conclude that Reardon has not raised a fact issue on the third element of an informal marriage—whether the parties represented to others and held themselves out to the public as being married. *See* TEX. FAM. CODE ANN. § 2.401(a)(2); *Small*, 352 S.W.3d at 285–87 (holding that evidence was factually insufficient to support jury's verdict of informal marriage); *Smith*, 285 S.W.3d at 910 (holding that putative husband "adduced no evidence of the essential element of holding out" and affirming

26

trial court's grant of summary judgment on issue of informal marriage). Reardon has therefore failed to raise a fact issue on the question whether he has a community property interest in Mooney's estate. We also conclude that Achord has conclusively established that Reardon, by signing the Agreement, the validity and enforceability of which is unchallenged, compromised, settled, released, or waived any interest that he had in Mooney's property. *See Cmty. Health Sys. Prof'l Servs. Corp.*, 525 S.W.3d at 681 (stating that matter is conclusively established if reasonable people could not differ as to conclusion to be drawn from evidence); *see also D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.) (stating that release is "an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered" and that release "extinguishes a claim or cause of action and is an absolute bar to any right of action on the released matter"). We hold that the trial court correctly granted summary judgment in favor of Achord.

We overrule Reardon's first and second issues.

27

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.